UNGER and another, Plaintiffs in error, vs. THE STATE, Defendant in error.

*January 12—April 11, 1939.*

For the plaintiffs in error there were briefs by *Gilbert E. Vandercook,* attorney, and *Fish, Marshutz & Hoffman, I. A. Fish,* and *W. H. Voss* of counsel, all of Milwaukee, and oral argument by *Mr. Fish* and *Mr. Voss.*

For the defendant in error there were briefs by the *Attorney General, J. Ward Rector,* deputy attorney general, *N. S. Boardman,* assistant attorney general, and *L. E. Vaudreuil,* special counsel, and oral argument by *Mr. Vaudreuil.*

The following opinion was filed February 7, 1939:

MARTIN, J.  The errors assigned are that the court erred:

(1) In denying the motion to quash the information;

(2) In overruling the demurrer to the information;

(3) In denying the motion for dismissal; and

(4) In adjudging defendants guilty upon all counts of the information.

No bill of exceptions having been settled, the record is here without the evidence given upon the trial. We do not deem it necessary to separately discuss the assignment of errors. The decisive question is: Does the information state any offense or offenses? The gist of the alleged offense stated is that on or about the date alleged in each count, defendants unlawfully, wilfully, and feloniously authorized, directed, aided in, and consented to the sale (such sale being a disposition for value) of certain securities, namely, warehouse receipts for certain quantities of whiskey, and that said securities had not been theretofore registered by the public service commission of Wisconsin, contrary to the statute, etc. The warehouse receipts are the alleged securities. It appears to be conceded that a warehouse receipt is a muniment of title. Under the Uniform Warehouse Receipts Act, ch. 119, Wisconsin statutes, we have two forms of warehouse receipts, negotiable and nonnegotiable. The nonnegotiable is:

"A receipt in which it is stated that the goods received will be delivered to the depositor, or to any other specified person. . . ." Sec. 119.05, Stats.

A negotiable receipt is:

"A receipt in which it is stated that the goods received will be delivered to the bearer, or to the order of any person named in such receipt. . . . No provision shall be inserted

in a negotiable receipt that it is nonnegotiable. Such provision, if inserted, shall be void." Sec. 119.06, Stats.

Sec. 119.39, Stats., provides:

"(1) A negotiable [warehouse] receipt may be negotiated by delivery:
"(a) Where, by the terms of the receipt, the warehouseman undertakes to deliver the goods to the bearer, or
"(b) Where, by the terms of the receipt, the warehouseman undertakes to deliver the goods to the order of a specified person, and such person or a subsequent indorsee of the receipt has indorsed it in blank or to bearer.
"(2) Where, by the terms of a negotiable receipt goods are delivered to bearer, or where a negotiable receipt has been indorsed in blank or to bearer, any holder may indorse the same to himself or to any other specified person, and in such case the receipt shall thereafter be negotiated only by the indorsement of such indorsee."

Under the above statute, negotiable warehouse receipts pass by delivery or indorsement like negotiable paper. Bouvier's Law Dictionary defines warehouse receipts thus:

"Receipts given by a warehouseman for chattels placed in his possession for storage purposes." (2 Bouv. Law Dict., Rawle's Third Revision, p. 3425.)

All essentials of a warehouse receipt are covered by ch. 119, Stats., Uniform Warehouse Receipts Act. Speaking of the transfer of title to property through the medium of warehouse receipts, the United States supreme court in *Dale v. Pattison,* 234 U. S. 399, 408, 34 Sup. Ct. 785, 58 L. Ed. 1370, said:

"They as absolutely transfer the general property of the goods and chattels therein expressed, as would a bill of sale. They are a kind of instrument extensively used by commercial men, as the most convenient mode of transfer and constructive delivery of property, and facilitating the ready realization of the price of products by the producer remote from market."

Apparently, the state tried to bring the case within the provisions of sec. 189.02 (7), Stats., which subsection provides:

"(7) 'Security' or 'securities' includes all bonds, stocks, beneficial interests, investment contracts, interests in oil, gas or mining leases or royalties, preorganization subscriptions or certificates, land trust certificates, collateral trust certificates, mortgage certificates, certificates of interest in a profit-sharing agreement, notes, debentures, or other evidences of debt or of interest in or lien upon any or all of the property or profits of an issuer, any interest in the profits of a venture, the memberships of corporations organized without capital stock, and all other instruments or interests commonly known as securities."

The predicament of the state's case in this court is frankly conceded by the following statement in the state's brief:

"The record as filed in this court [supreme court] does not contain the form of the warehouse receipt used, nor does the record contain *the documents used as part and parcel of this warehouse receipt at the time sale was made by the plaintiffs in error*. We are satisfied that if the entire record were before this court with the evidence as it pertains to the sales as alleged in each count and with the document that was sold with the warehouse receipt and as part of it, there would be no question but what the plaintiffs in error did sell securities as defined by statute."

This admission prompts the inquiry: Why were such facts if they existed not alleged in the information? We can understand why the defendants chose not to settle a bill of exceptions, but the state could have proposed and settled a bill of exceptions and thereby brought to this court all of the evidence, oral and documentary, that was offered upon the trial below. While the information mentions the sale of "certain securities," it describes such securities as being "one warehouse receipt for two barrels of whiskey. . . ." The sale of the warehouse receipt, on the record as it is here, simply transferred the title to the two barrels of whiskey. We may

gather from the state's admission, above quoted, that the defendants used other documents in connection with the sale of the warehouse receipt. It may well be that some scheme whereby other documents were used in connection with the warehouse receipt might have destroyed the legal status of the warehouse receipt, and in connection with other documents it might conceivably constitute a security within the meaning of sec. 189.02 (7), Stats., therefore requiring registration by the Wisconsin public service commission. However, such facts were not alleged in the information or in any of the counts thereof.

This court has recently had occasion to consider the sufficiency of the allegations of an indictment or information in the case of *Liskowitz v. State,* 229 Wis. 636, 641, 282 N. W. 103. The court said:

"It is not sufficient to charge generally that the accused committed an offense. The early cases in this state are to the effect that 'all the facts and circumstances constituting an offense must be specifically set forth.' 'To constitute a proper charge of an offense created by statute, every circumstance necessary to an exact description of the offense as defined by the statute creating it must be critically set forth.' 2 Callaghan's Wis. Digest, p. 1615, § 126, citing *State v. Gaffrey,* 3 Pin. 369; *In re Booth,* 3 Wis. *157. The strictness of the rule in this respect has been modified by the statute providing that it is sufficient to charge an offense in the language of the statute. Sec. 355.33, Stats., and by several statutes relating to specific offenses. The effect of these statutes is discussed in *Spoo v. State,* 219 Wis. 285, 288, 262 N. W. 696. It is there pointed out, citing *Finsky v. State,* 176 Wis. 481, 187 N. W. 201, *that in stating statutory offenses enough must be stated to so 'individuate the offense that the offender has proper notice . . . [of] what the offense he is to be held for really is.'* This statement implies that an indictment or information must inform the accused of what particular acts it is claimed he committed or of what particular omission it is claimed he was guilty. If a crime involving personal violence were charged in the language of the statute creating it with-

out stating upon whom the act of violence was committed, or if burglary were charged without mention of the premises burglarized, it could hardly be claimed that the information or indictment notified the accused of the particular crime for which he was put upon trial. *The rule is that a statement of an offense in the language of the statute is sufficient whenever enough is stated in connection with the use of the statutory language to inform the accused of the particular act of violation claimed. Rosenberg v. State, 212 Wis. 434, 249 N. W. 541.* Conversely, if enough is not stated so to inform him, or, in other words, to individuate the offense, it is not sufficient."

The state contends that under sec. 355.23 (4), Stats., the information cannot be deemed defective. This section provides:

"No indictment or information shall be deemed invalid nor shall the trial, judgment or other proceedings thereon be affected: . . .

"(4) By reason of any other defect or imperfection in matters of form which shall not tend to the prejudice of the defendant."

Clearly the information in the instant case stated no offense. The motion to quash should have been granted. It was error to receive evidence upon any of the counts of the information. Can it be said that it was not prejudicial error to compel the defendants to go to trial upon an information which did not charge any offense? Clearly not. What is said in *Liskowitz v. State, supra,* is particularly applicable in the instant case.

*By the Court.*—The judgment and sentence of the circuit court as to both defendants are reversed, and the record remanded with directions to discharge both defendants.

A motion for a rehearing was denied, without costs, on April 11, 1939.