STATE, Plaintiff, vs. UNGER and others, Defendants.

*February 6—March 11, 1941.*

For the plaintiff there was a brief by the *Attorney General, James Ward Rector,* deputy attorney general, and *Rickard H. Lauritzen,* assistant attorney general, and oral argument by *Mr. Lauritzen.*

For the defendants the cause was submitted on the brief of *Bassuener, Humke & Poole* attorneys for William F. Unger, and *Gruhle & Fessler* attorneys for Robert C. Unger, and *Joseph W. Wilkus* of counsel, all of Sheboygan.

FOWLER, J.   The case comes before the court pursuant to sec. 358.08, Stats., upon a certified statement and findings of fact for answer to the question whether those facts "constitute the sale by the defendants of securities as defined in sub. (7) of sec. 189.02, Stats., in violation of sub. (2) of sec. 189.16."

Sub. (7) of sec. 189.02, Stats., provides that " 'security' or 'securities' includes all . . . [among other things] beneficial

interests, investment contracts, . . . any interest in the profits of a venture, . . . and all other instruments or interests commonly known as securities. . . ."

Sub. (2) of sec. 189.16, Stats., provides that every person "shall be punished . . . who authorizes . . . [or] aids in . . . the . . . sale . . . or sells . . . any securities . . . contrary to ch. 189, Stats."

By sec. 189.06, Stats., which is contained in ch. 189, sales of securities are prohibited unless registered with the public service commission. The transactions involved occurred in 1936 and 1937. The material statutes then in force were the same as in the statutes of 1939, except that in the statutes of 1939 the bureau with which registration is required is called the department of securities. The instruments herein involved were sold by the defendants but were not registered with the commission. Thus the question for determination is, Were the instruments sold "securities" within the meaning of the act?

The material facts, other than above stated, are as follows: The sales involved were of warehouse receipts for bonded whiskey, and as part of each transaction there was delivered a guaranty by the defendants to deliver to the holder of the receipt at his option at the end of six months another warehouse receipt for an equal amount of "green" whiskey and a specified amount in cash. The guaranty of the cash payment was based on an assumed increase in whiskey prices and the difference between the value of "green" and six months' old whiskey. The amount guaranteed to be paid at the end of the six months' period was $6.50 for every barrel of $57.50 whiskey and $16.90 for every barrel of $86 whiskey represented by the warehouse receipt. In connection with the transaction and to induce it a pamphlet was used which showed a "schedule of profits" equivalent to the cash payments guaranteed. While the guaranty by its terms recited a pur-

chase of the whiskey covered by it, no delivery of whiskey was ever made or contemplated, but the thing actually sold was the warehouse receipt and the accompanying guaranty. In the pamphlet referred to the warehouse receipt was represented as a "real investment" and "ultimate security of . . . [the] original investment" was impliedly assured. "Profits" were represented as arising "from steady demand, plus scarcity of aged whiskey," and the transaction was otherwise characterized as an "investment."

Reference to sec. 189.02 (7), Stats., above stated, shows that it covers "beneficial interests," "investment contracts," "interest in a profit venture," and "all other instruments or interests commonly known as securities."

We are of opinion that the facts stipulated constitute the receipt and guaranty securities under the terms of the statute above stated. They show a contract covering each one of the first three things next above quoted from the statute. This accords with *Brownie Oil Co. v. Railroad Comm.* 207 Wis. 88, 240 N. W. 827; *Creasy Corp. v. Enz Bros. Co.* 177 Wis. 49, 187 N. W. 666; *State v. Gopher Tire & Rubber Co.* 146 Minn. 52, 177 N. W. 937; *State v. Robbins,* 185 Minn. 202, 240 N. W. 456; *Kerst v. Nelson,* 171 Minn. 191, 213 N. W. 904, 54 A. L. R. 495. Other cases more or less closely in point are cited by plaintiff: *State v. Hofacre,* 206 Minn. 167, 288 N. W. 13; *Gracchi v. Friedlander,* 93 Cal. App. 770, 270 Pac. 235; *State v. Pullen,* 58 R. I. 294, 192 Atl. 473; *Stevens v. Liberty Packing Corp.* 111 N. J. Eq. 61, 161 Atl. 193; *Securities & Exchange Comm. v. Universal Service Asso.* (7th Cir.) 106 Fed. (2d) 232.

Transactions identical with the instant transactions were involved in *Unger v. State,* 231 Wis. 8, 284 N. W. 18. We there held the information insufficient for failure to allege any facts showing that the warehouse receipt itself, stand-

ing alone, constituted a security. We there said however (p. 14):

"It may well be that some scheme whereby other documents were used in connection with the warehouse receipt might have destroyed the legal status of the warehouse receipt, and in connection with other documents it might conceivably constitute a security within the meaning of sec. 189.02 (7), Stats., therefore requiring registrations by the Wisconsin public service commission."

The instant information avoids the defect of the former information. It is confessedly sufficient if the instruments sold, together with the guaranty and the documents used in connection with the sale to induce them, constitute the receipt and guaranty a security within the meaning of the section of the statute first cited herein. We hold that the instruments are securities within such statute.

*By the Court.*—The question stated at the head of the opinion is answered "Yes."