STATE of Wisconsin, Plaintiff-Respondent,

v.

Alice R. DEAN, M.D., Defendant-Appellant.†

Court of Appeals

*No. 81–328–CR. Submitted on briefs September 9, 1981.—*
*Decided November 4, 1981.*
(Also reported in 314 N.W.2d 151.)

† Petition to review denied.

For the appellant the cause was submitted on the briefs of *Stephen M. Glynn* of *Shellow & Shellow,* of Milwaukee.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Michael R. Klos,* assistant attorney general.

Before Decker, C.J., Moser, P.J., and Randa, J.

MOSER, P.J.    Alice R. Dean (Dean) appeals from a judgment of conviction entered on August 11, 1980, and an order denying post-trial motions entered on February 6, 1980.    Dean was convicted after trial to a jury of theft by fraud as party to a crime in violation of secs. 943.20 and 939.05, Stats., and false swearing in violation of sec. 946.32(1)(b).    The theft by fraud charge arose from alleged overbilling of the medicaid program.    The false swearing charge grew out of inconsistencies between a sworn statement made by Dean during an interview with an assistant district attorney regarding her

billing practices and Dean's sworn testimony during a John Doe proceeding on the same matter.

On September 24, 1980, the state appealed from the judgment of conviction and an order of probation which stayed the sentence and required Dean to spend three years in India as a condition of probation. This court vacated that part of the judgment and order and remanded the case to the trial court.[1]

Dean's appeal addresses other aspects of the proceedings which were unaffected by our previous order. We conclude that Dean's claims of error were either waived or have no merit and affirm.

The facts in evidence were presented largely by stipulation. Dean is a licensed physician specializing in psychiatry. Between 1974 and 1977, Dean was eligible to be reimbursed by Surgical Care Blue Shield (Blue Shield), the fiscal agent for Wisconsin's medicaid program, for services performed for medicaid recipients. Between April, 1974 and April, 1976, Dean provided psychiatric evaluations of a number of medicaid recipients referred to her by the Family Outreach Social Services Agency. Dean spent an hour or less with each referred patient. Blue Shield was subsequently billed for two hours for each of these evaluations. Between June, 1974 and May, 1976, false claims totaling at least $13,285 were submitted to Blue Shield under the medicaid program. Although Dean's then husband, Earle Sisley (Sisley) typed many or all of the claim forms, Dean signed each. The checks in payment were issued to Dean and deposited by Dean in her bank account.

On June 3, 1977, during a preliminary investigation, Dean appeared with her attorneys at the office of assistant district attorney Charles B. Schudson. Dean was advised of her Miranda rights and placed under oath.

---

[1] *State v. Dean,* 102 Wis. 2d 300, 306 N.W.2d 286 (Ct. App. 1981).

Dean then stated that she and her daughter prepared the medicaid claim forms which were submitted to Blue Shield. On February 6 and February 8, 1978, Dean appeared with her trial counsel at a John Doe proceeding conducted in Milwaukee county. At that time, Dean testified that Sisley prepared all the medicaid claim forms; that her daughter never prepared any of these forms; and, that she had lied at the prosecutor's office because Sisley had threatened her life.

At trial, both Dean and Sisley testified extensively. Dean did not deny that the overbilling had occurred or that the sworn statements made in the prosecutor's office and at the John Doe proceeding were contradictory. Dean's defense to the theft by fraud charge was that she had no knowledge that the false claims were being submitted because the billing was handled by Sisley. Her defense to the false swearing charge was that Sisley had coerced her into making the false statements. The jury returned a verdict of guilty on both counts. The trial court entered a judgment of conviction and denied all postconviction motions.

The issues on appeal are:

1. whether the trial court erred when it refused Dean's request for a theory of the case instruction on the inheritance/succession provisions of the probate code;
2. whether the information which alleged that Dean violated sec. 946.32(1)(b), Stats., the false swearing statute, but did not set forth the two allegedly inconsistent statements, failed to provide Dean with adequate notice of the charge;
3. whether the evidence is sufficient to support a finding that the oath administered to Dean prior to taking her statement in the prosecutor's office is one "authorized or required by law" within the meaning of sec. 946.32(1)(b);
4. whether the jury instructions on false swearing utilized by the trial court misstated the law, failed

to define an essential element or directed the verdict on an essential element; and,

5. whether Dean was denied due process of law when she was charged with making inconsistent statements under oath in violation of sec. 946.32(1)(b).

## THEORY OF THE CASE INSTRUCTION

Dean's defense to the theft by fraud charge was that she was unaware that Sisley was inflating the amount of time spent with each patient on the medicaid billing forms. Dean did, however, stipulate that the checks from Blue Shield were mailed to her and deposited by her. As part of her defense, Dean sought to explain why Sisley would engage in a fraud that did not benefit him. Dean's theory was that "Sisley would cause Dean to commit suicide and then, as her husband, he would inherit under Wisconsin Probate Law, regardless of Dean's testacy."[2] Defense counsel examined Sisley on his knowledge of the contents of Dean's will and his awareness that Dean had talked of suicide. Defense counsel requested the trial court to instruct the jury that, under the provisions of ch. 861, Stats., Sisley would inherit not less than one-third of Dean's estate. The trial court refused, finding that Sisley's motives were not relevant to the issues before the jury. In her postconviction motions, Dean again raised the issue of the trial court's failure to provide the requested instruction and the trial court affirmed its earlier ruling.

Dean contends that Sisley's motives were central to her defense and that the trial court erred in not giving the defense theory instruction. We disagree.

A defendant is entitled to an instruction on a valid applicable theory of defense where such instruction is

---

[2] Brief for Appellant at 8.

requested and supported by the evidence.[3] Where a defendant appeals from a denial of a requested jury instruction, the evidence must be viewed in the light most favorable to the defendant.[4]

The only issue of fact relative to the theft by fraud charge that was before the jury was whether Dean knew the claims submitted to Blue Shield were false. Even when the evidence is viewed most favorably to Dean, it is clear that Dean's requested defense instruction was not relevant or applicable to this issue. Sisley was not on trial and his motive for engaging in fraud was of little concern to the jury.

Dean relies on *Runge v. State*[5] to support her contention that the instruction was mandatory. In that case, our supreme court ruled that the trial court erred when it declined to instruct the jury that, under Wisconsin law, the defendant could not inherit property from his deceased wife.[6] In *Runge,* the defendant was on trial for murdering his wife and the requested instruction was relevant to his motive, an issue in the case. In the present case, the requested instruction relates only to the motive of a witness for engaging in a crime for which he is not on trial. We are unwilling to extend the theory of defense instruction to include the legal basis for the motivation of a witness who is not a defendant. To do so would compel the trial court and jury to consider factors not fundamental to their determination of the guilt or innocence of the person charged.

[3] *Turner v. State,* 64 Wis. 2d 45, 51, 218 N.W.2d 502, 505 (1974).

[4] *Johnson v. State,* 85 Wis. 2d 22, 28, 270 N.W.2d 153, 156 (1978).

[5] 160 Wis. 8, 150 N.W. 977 (1915).

[6] *Id.* at 16, 150 N.W. at 979.

## INADEQUACY OF THE INFORMATION

Count 2 of the information issued on February 22, 1979, provides that Dean:

[O]n June 3, 1977, at 821 W. State Street, Milwaukee, Wisconsin, and on February 6, 1978, at 901 N. 9th Street, Milwaukee, Wisconsin, did make inconsistent statements under oath in regard to matters respecting which an oath was, in each case, authorized by law, under circumstances which demonstrate that defendant knew at least one of the statements to be false when made, contrary to Wisconsin Statutes section 946.32(1)(b).

Dean contends that the information is defective and did not vest the trial court with subject matter jurisdiction because it failed to identify the inconsistent statements made by Dean. It is clear that selective transcript pages from the proceeding in the district attorney's office and the John Doe proceeding were attached to and incorporated by reference in the complaint issued two days before the information.[7] Dean argues, however,

---

[7] The portion of Dean's June 3, 1977 sworn statement, which was incorporated in the complaint, reads in full as follows:

Q Maybe I should get a better understanding, do you have clerical staff?

A No.

Q You would prepare your own Title 19 claim forms?

A Yes.

Q You would write them?

A Type them partly by me. I had between '74 and '76 a teenage daughter in high school and she would earn her allowance by coming down to the office on a Saturday or school holiday and the filling [sic] forms are very simple and she would do them. Then she was in college.

Q Follow examples of ones you had done?

A Yes and I would give the list to work from to her.

Q The list?

A Of those people whom I had seen for billing.

Q As far as you know did her preparation of the claim forms differ from your preparation?

that because no specific statement is identified as being inconsistent with any other, neither the complaint nor the information provided Dean with adequate notice of the charges. We conclude that the information is adequate to confer jurisdiction.

An information must inform the defendant of the charges against him and all the substantive elements of the crime so as to enable the defendant to defend on the specific offense charged and to plead the conviction in

A No.

Q How did they get from your office to Blue Shield?

A They were mailed.

Q Did you check the ones done by your daughter before they would go in the mail?

A Yes.

Q Where does she go to college?

A Ann Arbor, Michigan.

Q What's her name?

A Alice.

The portion of Dean's February 6, 1978 John Doe testimony, which was incorporated in the complaint, reads in full as follows:

Q All right, Doctor Dean, other than Mr. Sisley, did anyone else ever prepare Title 19 claim reports?

A No. Well, I did prior to Mr. Sisley because I was seeing Title 19 before then.

Q Do you have a daughter?

A Yes, I have.

Q What is her name?

A Alice Catherine Dean, Alice Catherine Grenier.

Q That is your only daughter?

A No, I have another daughter, Lisa.

Q All right. Did either Lisa or Alice ever prepare any Title 19 claim report that was submitted to Blue Shield for your, for services you rendered?

A Not the Title 19's.

Q Any others?

A Catherine did the private billing, oh, about the last year and a half that she was in high school, none of the Title 19, but my private patients she would bill.

Q Catherine again is Alice?

bar to future prosecutions on the same offense.[8] If the information meets this test, it will not be found inadequate even if it designates the wrong statute or fails to include an element of the crime where both the defendant and jury are properly apprised of the elements.[9] While the claimed defect in this case is not technically one of form,[10] we see no reason for applying a different standard for evaluating the information's adequacy. Therefore, if the present information was sufficiently particular to enable Dean to understand the offense charged and to prepare a defense it is adequate to confer jurisdiction.[11]

None of the cases cited by Dean[12] suggests a contrary rule. In *Russell v. United States*,[13] for example, the Supreme Court outlined two of the criteria by which the sufficiency of an indictment is to be measured:

These criteria are, first, whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet,' " and, secondly, " 'in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent

A Yes, I'm sorry. It's Alice Catherine. I call her Catherine.

Q All right. Then did Alice Catherine, your daughter, ever prepare any Title 19 claim reports that were submitted to Blue Shield for services you rendered?

A No, she did not.

[8] *Schleiss v. State*, 71 Wis. 2d 733, 739, 239 N.W.2d 68, 73 (1976).

[9] *State v. Waste Management*, 81 Wis. 2d 555, 566, 261 N.W.2d 147, 151–52, *cert. denied*, 439 U.S. 865 (1978).

[10] Sec. 971.26, Stats. *See also State v. Dorcey*, 98 Wis. 2d 718, 720, 298 N.W.2d 213, 215 (Ct. App. 1980).

[11] Schleiss, *supra* note 8, at 739, 239 N.W.2d at 73.

[12] *Russell v. United States*, 369 U.S. 749 (1962); *Unger v. State*, 231 Wis. 8, 284 N.W. 18 (1939); *Tibbals v. State*, 5 Wis. 596 (1855).

[13] 369 U.S. 749 (1962).

he may plead a former acquittal or conviction.' "[14]   [Citations omitted.]

After applying these criteria, the Court held that an indictment charging a violation of 2 U.S.C. sec. 192 (refusal of a witness before a congressional committee to answer questions pertinent to the subject under investigation) must allege the subject matter of the investigation.[15] The Court reasoned that without this allegation, the indictment did not inform the defendant of the nature of the accusation and made it impossible for the trial court to ascertain what the subject under investigation was and to initially determine whether the facts were sufficient to support the indictment.[16]

These difficulties are not present here. The charging portion of the complaint and the information set out the statutory elements of the false swearing charge and designate the proper statute. Portions of Dean's testimony given on June 3, 1977 in the district attorney's office, and in February, 1978 at the John Doe hearing, were appended to the complaint. The complaint made it clear to both Dean and the trial court that the inconsistent statements which formed the basis of the false swearing charge were Dean's June 3, 1977 testimony that she and her daughter prepared the medicaid billing forms, and Dean's John Doe testimony that no one other than Sisley prepared the forms. Dean, in fact, stipulated to these particular statements, thereby isolating them for the jury. Dean does not suggest, and the record does not reflect, that the claimed lack of particularity hampered her defense. In view of the complaint with its appended statements, the stipulation, and Dean's coercion defense which evidences no confusion as to the charge,

[14] *Id.* at 763–64.
[15] *Id.* at 771.
[16] *Id.* at 764–71.

we conclude that Dean was given adequate notice of the false swearing charge.[17]

## OATH "AUTHORIZED OR REQUIRED BY LAW"

Dean argues that as a matter of law an oath is neither authorized nor required by law within the meaning of sec. 946.32(1)(b), Stats.,[18] for a precharging interview in the district attorney's office. Dean contends that the prosecution failed to produce any evidence that Dean's sworn statements were authorized or required by law and that one of the statutory elements of felony false swearing was therefore not proved. However, Dean concedes that she did not raise this issue before the trial court. The record also reflects that Dean stipulated that she had testified in the district attorney's office "to matters

[17] This conclusion is consistent with our recent decision in *State v. Copening*, 103 Wis. 2d 564, 575–77, 309 N.W.2d 850, 855–56 (Ct. App. 1981). The defendant in that case contended that an information charging a conspiracy under sec. 939.31, Stats., must allege an overt act committed by the defendant in furtherance of the conspiracy. This court held that because the factual allegations relied on by the state are normally found in the complaint, the information need only allege the statutory elements of the crime, and an information charging conspiracy need not contain an allegation of the overt acts allegedly committed by the defendant in furtherance of the conspiracy.

[18] Sec. 946.32(1)(b), Stats., provides:

False swearing. (1) Whoever does either of the following is guilty of a Class D felony:

. . . .

(b) Makes or subscribes 2 inconsistent statements under oath or affirmation in regard to any matter respecting which an oath or affirmation is, in each case, authorized or required by law or required by any public officer or governmental agency as a prerequisite to such officer or agency taking some official action, under circumstances which demonstrate that the witness or subscriber knew at least one of the statements to be false when made.

respecting which an oath was authorized by law." Our supreme court has repeatedly stated that absent a showing of compelling circumstances, an appellate court will not review a claim that was not raised before the trial court.[19] Although this court may decide a constitutional question not raised in the lower court which affects the substantial justice of the trial,[20] we properly decline to address claims not raised below "which do not impugn the integrity of the determination of guilt but assert instead that the trial of the defendant should not have commenced."[21]

Because Dean, in fact, stipulated that the oath in the prosecutor's office was authorized by law and did not raise the issue before the trial court, and because the matter is not one which rises to the level of a constitutional question that affects the substantial justice of the trial, we decline to consider it for the first time on appeal.

## FALSE SWEARING INSTRUCTIONS

Dean alleges that the trial court's instructions to the jury on the false swearing charge misstated the law, did not define the element "authorized or required by law" and directed a verdict as to this element. Dean acknowledges that no objection to the instruction was made during trial or in motions after verdict, but suggests that the claimed error is of such significance that we ought to consider it for the first time on appeal.

The general rule is that the failure to make a timely objection to the jury instruction is a waiver of an alleged

[19] *Maclin v. State*, 92 Wis. 2d 323, 327–31, 284 N.W.2d 661, 663–65 (1979), and cases cited therein.

[20] *Id.* at 329, 284 N.W.2d at 664.

[21] *Id.* at 330, 284 N.W.2d at 665.

defect in those instructions.[22] Even if no objection is made, however, this court may review errors in instructions which are "so plain or fundamental as to affect substantial rights of the defendant."[23] Where the instruction, when considered as a whole,[24] misstates the law or misleads the jury, the error is of such magnitude.[25]

Since Dean made no objection to the instructions, our review of claimed error is discretionary.[26] Given that Dean not only failed to object, but stipulated that the "authorized or required by law" element was present and that the claimed error had no bearing on the crucial issue before the jury—whether Dean was coerced to make the statement—we decline to review the instructions.

## DUE PROCESS CLAIM

Dean admits that the statement she gave the assistant district attorney on June 3, 1977, was false. Her defense throughout these proceedings has been that she was coerced by Sisley to make the false statement. Dean contends that when she was subpoenaed to appear at the John Doe hearing and elected to testify in order to explain the coercion, she could not do so without making a statement inconsistent with her June 3, 1977 statement,

[22] *State v. Baldwin,* 101 Wis. 2d 441, 445, 304 N.W.2d 742, 746 (1981).

[23] *State v. Nye,* 100 Wis. 2d 398, 401, 302 N.W.2d 83, 85 (Ct. App. 1981).

[24] *Moes v. State,* 91 Wis. 2d 756, 768, 284 N.W.2d 66, 72 (1979).

[25] *Werner v. State,* 66 Wis. 2d 736, 751, 226 N.W.2d 402, 409 (1975); *Nye, supra* note 23, at 401, 302 N.W.2d at 85.

[26] *Nye, supra* note 23, at 401, 302 N.W.2d at 85.

thereby subjecting herself to prosecution under sec. 946.32(1)(b), Stats. Dean claims, therefore, that the prosecutor abused his discretion by insisting that statements made by Dean at the John Doe hearing be under oath and that she was deprived of her due process right to present a defense. The arguments are without merit.

Dean appeared at the John Doe proceeding with her trial counsel and, before testifying, was apprised by her counsel and the court that she did not have to testify and that a contradictory statement, if made, could form the basis for a false swearing charge. Dean indicated that she did not desire to take the fifth amendment and that she understood that the statements she would make might be incriminatory because they were inconsistent with previous statements.

It is true that had Dean not testified there would have been no inconsistent statements. It does not follow, however, that Dean's due process rights were violated when she opted to testify in order to present her coercion defense. When Dean gave the false statement to the assistant district attorney she subjected herself to liability for felony false swearing under sec. 946.32(1)(a), Stats.[27] Although Dean's John Doe testimony opened the door to a different theory of prosecution under sec. 946.-32(1)(b), her criminal liability did not thereby change. Moreover, even if Dean's John Doe statements did result in prosecution for felony false swearing, they were made only after Dean unequivocally waived her fifth amendment rights. The coercion defense which Dean intro-

[27] Sec. 946.32(1)(a), Stats., provides:

False swearing. (1) Whoever does either of the following is guilty of a Class D felony:

(a) Under oath or affirmation makes or subscribes a false statement which he does not believe is true, when such oath or affirmation is authorized or required by law or is required by any public officer or governmental agency as a prerequisite to such officer or agency taking some official action.

duced in her John Doe testimony was fully developed at trial. We cannot say that Dean's due process right to present a defense was in any way hampered by the requirement that Dean's John Doe statements regarding her earlier false statement be made under oath.

*By the Court.*—Judgment and order affirmed.