STATE of Wisconsin, Plaintiff-Respondent,†

v.

Marty R. CABAN, Defendant-Appellant.

Court of Appeals

*No. 94–1015–CR. Submitted on briefs January 13, 1995.—Decided May 2, 1996.*

(Also reported in 551 N.W.2d 24.)

†Petition to review granted.

416

417

For the defendant-appellant the cause was submitted on the briefs of *Katherine R. Kruse* of *Legal Assistance To Institutionalized Persons* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Diane M. Nicks*, assistant attorney general.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J. In this appeal, we hold that the "automobile exception" to the warrant procedure of the Fourth Amendment to the United States Constitution allows the police to search "readily mobile" automobiles without first obtaining a warrant for that purpose. We further hold, however, that the automobile exception does not dispense with the requirement that the police have probable cause to believe that an automobile contains evidence of a crime before they may abandon the warrant procedure. Because the police did not have probable cause to believe that defendant-appellant Marty Caban's automobile contained evidence of a crime, the trial court erred when it denied Caban's motion to suppress evidence of marijuana seized by the police in a search of his automobile. We therefore reverse the order denying Caban's motion and the judgment convicting him of one count of possession of marijuana with intent to deliver and remand this cause for a new trial.

## BACKGROUND

On Wednesday evening, March 31, 1993, Caban visited friends, Fred and Denise Hollingsworth, at their apartment in the City of Janesville, Wisconsin. He parked his unlocked car on the public street, just south of the Hollingsworth driveway. Officers of the

Rock County Metro Drug Unit, who were preparing to execute a search warrant of the Hollingsworth apartment, observed Caban enter the apartment building. Minutes later they executed the warrant. They placed Caban in hand restraints and made him lie on the floor. An officer searched him and found substantial cash on his person. The officer identified Caban as a person involved in a previous attempt to purchase "hash." He instructed another officer to search Caban's automobile. The officer searched the passenger compartment and the car's locked trunk. From the passenger compartment, she seized a plastic bag containing marijuana. The police then placed Caban under arrest.

The State charged Caban with possession of marijuana with intent to deliver. The trial court denied Caban's motion to suppress the seized evidence based on the court's conclusion that the search was a valid search incident to Caban's arrest. The State concedes, however, that the police did not arrest Caban until after the search of his automobile and the seizure of the marijuana found therein. The State argues that because the police had probable cause to search Caban's automobile, a search warrant was not necessary and that, in any event, Caban conceded in the trial court that the police had probable cause to search his vehicle for evidence of possession of marijuana. The State characterizes Caban's "concession" as a waiver.

## WAIVER

In the trial court, Caban argued that the police could have obtained a telephonic or other search warrant. "[The automobile] was not a threat to anyone. They could have waited and done their search at that time." The State contends this argument addresses lack of exigent circumstances and not lack of probable

cause to search Caban's automobile. It claims that therefore Caban waived the right to present that issue for our review by failing to raise the issue in the trial court. *See State v. Burke*, 148 Wis. 2d 125, 127 n.1, 434 N.W.2d 788, 789 (Ct. App. 1988), *rev'd on other grounds*, 153 Wis. 2d 445, 451 N.W.2d 739 (1990).

■ Warrantless searches are *per se* unreasonable. *State v. Milashoski*, 159 Wis. 2d 99, 110-11, 464 N.W.2d 21, 25-26 (Ct. App. 1990), *aff'd*, 163 Wis. 2d 72, 471 N.W.2d 42 (1991). The State has the burden of proving that a challenged warrantless search falls within one of the exceptions to this general rule. *State v. Pozo*, 198 Wis. 2d 706, 711 n.2, 544 N.W.2d 228, 230 (Ct. App. 1995). The State was therefore required to show that probable cause existed for the warrantless search of Caban's automobile.

## NEED FOR SEARCH WARRANT

(a) *Probable Cause.*

The State argues that if the police have probable cause to believe that an automobile contains evidence of a crime, the Fourth Amendment's command that the warrant procedure be complied with is an irrelevance. We agree that *State v. Tompkins*, 144 Wis. 2d 116, 137-38, 423 N.W.2d 823, 832 (1988), holds that the "automobile exception" dispenses with the need to show exigent circumstances to make a warrantless search of an automobile. The exception does not, however, dispense with the requirement that probable cause exist for the police to believe that an automobile they propose to search contains evidence of a crime.

(b) *The "Automobile Exception."*

The scope of the "automobile exception" is defined by *California v. Carney*, 471 U.S. 386 (1985). After considering previous decisions developing the automobile exception, Professor LaFave states "[b]ut then came the most significant case of *California v. Carney*." 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 7.2(b), at 471 (3d ed. 1996).

*Carney* involved the warrantless search of an occupied mobile home sited on a private lot. Because of uncorroborated information that it was being used by a person who was exchanging marijuana for sex, Drug Enforcement Agency agents had the home under surveillance. They watched a young man enter the mobile home and when he emerged they followed and stopped him. He told them that he had received marijuana in exchange for sex. The agents returned with him to the mobile home and had him knock on the door. When Carney answered the door, the agents entered and observed marijuana, plastic bags, and a scale. They took Carney into custody and seized the mobile home. The California Supreme Court concluded that the DEA's search and seizure of Carney's mobile home was unlawful and reversed Carney's conviction for possession of marijuana with intent to sell. The California court did not disagree with the conclusions of the lower court that the agents had probable cause to believe that the mobile home contained evidence of a crime. However, the California Supreme Court held that the agents' search was unreasonable because they did not obtain a warrant. 471 U.S. at 388-89.

A divided United States Supreme Court reversed. It rejected Carney's argument that the automobile exception should not be applied to his mobile home because it was capable of functioning as a home. *Id.* at 392-93. The Court said that its application of the auto-

mobile exception turned on the "ready mobility" of the vehicle and not on other uses to which the vehicle might be put.[1] *Id.* at 390-91. The Court made clear, however, that ready mobility is not the only basis for the automobile exception. *Id.* at 391. Less rigorous warrant requirements are justified because of the reduced expectation of privacy one has in his or her automobile. *Id.* The Court said: "These reduced expectations of privacy derive not from the fact that the area to be searched is in plain view, but from the pervasive regulation of vehicles capable of traveling on the public highways." *Id.* at 392.

Although the Court cited *Cady v. Dombrowski*, 413 U.S. 433, 440-41 (1973), to support this statement, *Cady* did not create a *per se* automobile exception. The *Cady* Court acknowledged that "this branch of the law [warrantless searches] is something less than a seamless web." *Id.* at 440. While the Court approved a warrantless search of a disabled vehicle which the police caused to be towed to a private garage, we infer that it would not have approved a warrantless search of the automobile had the circumstances been different. The Court noted: "The [automobile] was not parked adjacent to the dwelling place of the owner as in *Coolidge v. New Hampshire*, 403 U.S. 443 (1971), nor simply momentarily unoccupied on a street." 413 U.S. at 446-47.

*Carney* has not knitted up the shredded seams of the warrantless search branch of the law. Professor LaFave concludes that the line of cases from *Chambers v. Maroney*, 399 U.S. 42 (1970), through *Carney* "can-

---

[1] In *State v. Durbin*, 170 Wis. 2d 475, 484-85, 489 N.W.2d 655, 659 (Ct. App. 1992), we declined to extend the automobile exception to an unhitched camper trailer parked in the backyard of the owner's residence.

not be squared with the oft-stated principle that warrants-when-practicable is the best policy." SEARCH AND SEIZURE, § 7.2(b), at 472. He notes that the Court has come to emphasize the "lesser expectation of privacy" notion, not the mobility factor. *Id.* at 477. This emphasis is reflected in how lower courts now deal with vehicle searches. Lower courts "uphold warrantless searches with virtually no inquiry into the facts of the particular case, reasoning that whether any kind of exigent circumstances claim could plausibly be put forward is totally irrelevant." *Id.* Professor LaFave predicts that the Court will likely "back[ ] away" from *Carney, id.*, but until further clarification from the Court we would swim against a strong tide were we to require examination of the practicability of obtaining a warrant where the automobile exception may be appropriately applied. Some federal courts of appeals flatly reject such an examination: *United States v. Matthews*, 32 F.3d 294, 298-99 (7th Cir. 1994) ( *Carney* applies though car in custody and no longer mobile); *United States v. Gastiaburo*, 16 F.3d 582, 586 (4th Cir.) (fact it was "virtually impossible" that evidence would be lost before search warrant obtained "irrelevant"), *cert. denied*, 115 S. Ct. 102 (1994); *United States v. Ludwig*, 10 F.3d 1523, 1528 (10th Cir. 1993) (police need not get search warrant "even if they have time and opportunity"); *United States v. Hofstatter*, 8 F.3d 316, 322 (6th Cir. 1993) (even if government "had time to secure a warrant to search the automobile, there was no requirement that it do so"), *cert. denied*, 114 S. Ct. 1101 (1994); *United States v. McCoy*, 977 F.2d 706, 710 (1st Cir. 1992) ("probable cause alone justifies a warrantless search of a motor vehicle"); *United States v. Perry*, 925 F.2d 1077 (8th Cir.) (warrantless car search lawful though warrant could have been easily obtained), *cert.*

*denied*, 502 U.S. 849 (1991). Other courts continue to give lip service to the warrant requirement but "generally utilize a very loose and uncritical type of exigent circumstances inquiry, quite different from that which would be employed if the warrantless search were of premises." SEARCH AND SEIZURE at 481.

We conclude that the great weight of federal case law approves warrantless searches of mobile automobiles if probable cause exists for the police to believe that the vehicle contains evidence of a crime.

(c) *State Constitutional Law.*

Some state courts have required, as a matter of state constitutional law, some degree of exigent circumstances before an automobile may be searched without a warrant. In *State v. Kock*, 725 P.2d 1285, 1287 (Or. 1986), the Oregon supreme court said:

> [A]ny search of an automobile that was parked, immobile and unoccupied at the time the police first encountered it in connection with the investigation of a crime must be authorized by a warrant issued by a magistrate or, alternatively, the prosecution must demonstrate that exigent circumstances other than the potential mobility of the automobile exist.

The Wisconsin Supreme Court has, however, held that rights recognized in Article I, § 11 of the Wisconsin Constitution are coextensive with those recognized in the Fourth Amendment. *See State v. Fry*, 131 Wis. 2d 153, 171-76, 388 N.W.2d 565, 573-75, *cert. denied*, 479 U.S. 989 (1986). It is therefore unlikely that the Wisconsin Supreme Court will limit an expansive application of the automobile exception on state constitutional grounds.

(d) *Telephone Search Warrants.*

In none of the cases has the availability of a telephone warrant procedure been considered. If ready access to the warrant procedure is irrelevant because of the automobile exception, the police need not submit the question of probable cause to an impartial magistrate even if he or she is present at the scene, in person or by telephone. The Wisconsin Supreme Court has signalled that the availability of a duty judge and a statutory procedure— § 968.12(3), STATS.—to obtain a search warrant by telephone is not critical to the validity of a warrantless search, even the intrusive drawing of an arrestee's blood. *See State v. Bohling*, 173 Wis. 2d 529, 543, 494 N.W.2d 399, 404 (telephone search warrant procedure takes time and does not alter the exigencies of drawing blood because alcohol in a person's blood dissipates over time), *cert. denied*, 114 S. Ct. 112 (1993). The dissenting members of the court would have held that the State failed to show that the police did not have sufficient time to use the telephonic search warrant procedure. *Id.* at 548-50, 494 N.W.2d at 406-07 (Abrahamson, J., dissenting).

The fact that the police may intercept anyone attempting to move an unattended vehicle has not made a difference to those courts which dispense with the warrant procedure under the automobile exception, or employ "a very loose and uncritical" exigent circumstances inquiry. SEARCH AND SEIZURE at 481. Here, the police had Caban in custody, if not under arrest, and had ample time to obtain a search warrant, by telephone or otherwise. Nonetheless, the two factors which the *Carney* Court held justify a warrantless search of an automobile—inherent mobility and diminished expectation of privacy—are present in this case. Pro-

fessor LaFave notes that some courts hold that it is not a condition of mobility that the police reduce or eliminate the risk that evidence will disappear by seizing or guarding the vehicle believed to contain evidence of a crime. *See id.* at 477. A vehicle's "recent use as transportation establishes the 'reduced expectation of privacy' which the language of *Carney . . .* makes the dominant consideration." *Id.* at 476 (footnote omitted). Citing *Cady v. Dombrowski,* the *Carney* Court said: "Even in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception." 471 U.S. at 391.

The Court has come a long way since its seminal automobile exception decision in *Carroll v. United States,* 267 U.S. 132 (1925). There, the Court said that "practically since the beginning of . . . government," the guaranty of freedom from unreasonable searches and seizures has been construed as recognizing that the mobile nature of a vehicle or vessel justifies relaxation of the warrant requirement "*where it is not practicable to secure a warrant.*" *Id.* at 153 (emphasis added). Of course, in 1925, our love affair with the automobile had barely begun and the "pervasive regulation," *Carney,* 471 U.S. at 392, now invoked to justify the diminished expectation of privacy was long in the future.

On the basis of the state and federal precedents, we conclude that because Caban's automobile was inherently mobile, his reduced expectation of privacy therein justified application of the automobile exception. Therefore, the failure of the police to obtain a warrant to search his automobile did not violate Caban's right under the Fourth Amendment to be free from an unreasonable search and seizure.

## PROBABLE CAUSE

██

"When the police may proceed to search the vehicle without first obtaining a warrant, it would appear that only the procedure of acquiring a search warrant is being excused; there still must be grounds upon which a search warrant could have been issued." SEARCH AND SEIZURE, § 7.2(c), at 481. It is still essential that there be "circumstances that furnish probable cause to search a particular auto *for particular articles*." *Chambers*, 399 U.S. at 50-51 (emphasis added).

Probable cause is a "flexible, common-sense measure of the plausibility of particular conclusions about human behavior." *State v. Petrone*, 161 Wis. 2d 530, 547-48, 468 N.W.2d 676, 682, *cert. denied*, 502 U.S. 925 (1991). "[T]he evidence . . . collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)); *see also State v. DeSmidt*, 155 Wis. 2d 119, 134-35, 454 N.W.2d 780, 787 (1990) (officer's experience-based conclusions may be considered in determining whether probable cause exists), *cert. dismissed*, 498 U.S. 1043 (1991). In this case, however, the record does not support that the police applied their experience to determine whether probable cause existed to believe that Caban's automobile contained evidence of a crime. The police erroneously believed that Caban's vehicle was on the premises and subject to search under their warrant.

In any event, probable cause did not exist for the police to believe that Caban's automobile contained evi-

dence of a crime. On the evening of his arrest, Caban visited his friends at their apartment. The police did not know at that time whether Caban and the Hollingsworths were anything more than friends and the State does not now claim that they were. Caban did not try to conceal his ownership of his car which he parked on a public street near the apartment complex without locking it. The latter fact militates against a finding that Caban believed he had anything to hide.

Caban did not carry anything into the apartment building. This fact negates a finding that he intended to deliver drugs to his friends, and the State does not argue that Caban was there for that purpose. When the police executed the warrant to search the Hollingworths' apartment, they found Mr. and Mrs. Hollingsworth, their children, and Caban. They immediately handcuffed Caban and forced him to lie on the floor. They searched him but did not find drugs. However, they did find that he carried a substantial sum of money. From this fact, the State argues that the police properly inferred that Caban was dealing in drugs. Without more, we do not find that inference reasonable. The State does not inform us whether the police asked Caban where he got such a sum of money.

One of the officers testified at the suppression hearing that he recognized Caban from a previous execution of search warrant where Caban had tried to buy "hash." However, he did not testify that this was the reason he ordered another officer to search Caban's car. He did testify, however, that he ordered the search because he believed that Caban's car was on the premises and the search warrant authorized the police to search vehicles found on the premises. It appears, therefore, that the police mistakenly searched Caban's automobile. We reject the State's after-the-fact attempt

to create probable cause where there is no evidence that the officers on the scene believed they had cause to search Caban's car without a warrant.

*By the Court.*—Judgment and order reversed and cause remanded.

GARTZKE, P.J. (*concurring*). I reluctantly add a third opinion to this appeal. I agree with the dissent that Caban waived the probable cause issue because he did not raise it at the trial court level, but the lead opinion properly reviews the issue in view of the trial court's decision.

Because the trial court *sua sponte* addressed it, we may address the probable cause issue without fear of criticism. The trial court said,

> So in light of all the facts and circumstances, the court will find that there was a valid arrest of Mr. Caban, that the search of his vehicle, even though not directly on the premises where the drugs were found, was in the immediate vicinity. The police knew he came in the vehicle. He had a large amount of cash that would indicate possible drug dealing. That all of this gave, in conjunction with the arrest, the police officers probable cause to search the motor vehicle for evidence of crime. . . .

Thus, the trial court believed the facts were sufficiently developed to decide whether probable cause existed, and it decided the issue, even though appellant did not raise it and even though the court therefore could have affirmed the conviction without deciding the issue.

I disregard the dissenting opinion's musings regarding "feints" and the risk of an incomplete record. No "feint" occurred, and the trial court deemed the record sufficiently complete for it to raise and decide

the probable cause issue. It is therefore appropriate for us to review that decision.

I agree with the lead opinion that the police lacked probable cause to search the automobile.

DYKMAN, J. (*dissenting*). Because I conclude that Marty R. Caban has waived the issue of whether the police had probable cause to search his automobile, I do not join in the majority opinion. Permitting Caban to raise this issue for the first time on appeal advances the concept of trial by ambush, will result in needless appeals, and will waste the time of trial courts.

Caban moved to suppress evidence police officers seized during a search of his automobile. His motion did not assert that the officers lacked probable cause for the search and instead focussed on an absence of exigent circumstances:

> 4. That the vehicle from which the property was seized was not occupied by the defendant nor any person at the time of the seizure, nor was he in any close proximity thereto, and in addition, the vehicle did not, in and of itself, pose any threat or danger to any law enforcement officers at the scene.

At the suppression hearing, Caban argued that the search was invalid because:

> There [were] no exigent circumstances whatever that may or may not be these days. He was not operating or behind the vehicle at the time that they went to it and proceeded to search it. It was not pursuant, for example, to a traffic arrest or stop. They could have obtained a search warrant. Telephonic search warrant's a term I've just recently heard. There obviously must be one if I've heard it somewhere.

In any event, they could have obtained a search warrant very easily for the vehicle. It was not a threat to anyone. They could have waited and done their search at that time. . . .

. . . I think that the state in this instance really should have obtained a search warrant before they proceeded to look in the vehicle.

From reading Caban's motion and from his arguments in the trial court, the State correctly assumed that Caban was contesting the existence of exigent circumstances, one of the necessary elements of the probable cause-exigent circumstances exception to the Fourth Amendment's warrant requirement. Now, for the first time on appeal, Caban has changed his attack to an assertion that the police did not have probable cause to search his automobile.

The State has the burden of showing that a warrantless search comes within an exception to the Fourth Amendment's warrant requirement. *State v. Pozo*, 198 Wis. 2d 706, 711 n.2, 544 N.W.2d 228, 230 (Ct. App. 1995). But an appellant must still raise an issue in the trial court before he or she may raise it before us. "Our supreme court has repeatedly stated that absent a showing of compelling circumstances, an appellate court will not review a claim that was not raised before the trial court." *State v. Dean*, 105 Wis. 2d 390, 402, 314 N.W.2d 151, 157-58 (Ct. App. 1981). This rule should apply here despite the trial court's mention of the words "probable cause" in passing. Since Caban did not dispute the existence of probable cause in the trial court, the court assumed that Caban conceded the issue and that a finding of probable cause was therefore warranted.

I agree that we may, in our discretion, address matters not raised in the trial court. *Cheatham v.*

*State*, 85 Wis. 2d 112, 120-21, 270 N.W.2d 194, 198 (1978). But, by considering whether the officers had probable cause to search Caban's automobile despite the waiver of this issue, we encourage sandbagging and ambushes at suppression hearings.

The message we send today is that motions to suppress will have a better chance of success on appeal if defendants fail to alert the State or the trial court of the real reason for the motion. This may lead the State and the trial court to wrongly assume that the defendant is asserting one of many possible infirmities. If this feint is successful, the State and the trial court will focus on the wrong issue, and an incomplete record will be made as to the issue the defendant intends to raise on appeal. Then, on appeal, that other issue will be raised and the defendant will argue, as here, that no record exists to support the trial court's determination.

I do not believe that permitting defendants to raise new issues on appeal advances rights given to defendants by statute or the federal or state constitutions, nor does it protect them from possible State overreaching. Prosecutors will have to spend more time at suppression hearings negating all possible attacks on searches and seizures. Occasionally, an inadvertent omission will result in constitutionally obtained evidence being suppressed. Most of the time, the only result will be a waste of time. I see no reason to depart from our usual rule that a defendant waives matters he or she has not raised in the trial court. I therefore respectfully dissent.