STATE of Wisconsin, Plaintiff-Appellant,

v.

Isiah F. GLASS, Defendant-Respondent.

Court of Appeals

*No. 91–2880–CR. Submitted on briefs April 28, 1992.—Decided June 3, 1992.*

(Also reported in 488 N.W.2d 432.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Gregory M. Posner-Weber,* assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Nancy M. Barasch* of *Malinsky & Barasch* of Kenosha.

Before Nettesheim, P.J., Brown and Snyder, JJ.

SNYDER, J.  Isiah F. Glass was found guilty of second-degree sexual assault of a child, contrary to sec. 948.02(2), Stats. On motion for postconviction relief, he was granted a new trial on the basis of ineffective assistance of counsel. Glass' attorney did not call as a trial witness a state crime laboratory employee who would have testified that tests he conducted on vaginal swabs from the alleged victim were negative for the presence of semen. Instead, defense counsel stipulated that the test

results were "inconclusive." We agree that defense counsel rendered constitutionally deficient assistance. We affirm.

Glass was charged with second-degree sexual assault of a child, fourteen-year-old Natasha H. Natasha testified that she awoke one night to find Glass, her mother's boyfriend, on top of her, one hand over her mouth. She testified that he had vaginal intercourse over the course of the next half hour or so. She was unable to say whether he ejaculated.

At trial, the state's witness, Dr. James Concannon, testified regarding his examination of Natasha after the alleged assault. Dr. Concannon termed the physical exam "unremarkable." He also stated that Natasha showed no signs of genital trauma but that he did find a small amount of whitish fluid at the back of her vagina.

Hospital personnel had prepared a "sexual assault kit" during Natasha's physical exam, taking blood and hair samples, fingernail clippings, and rectal and vaginal specimens. The kit was sent to the state crime lab for analysis. The tests were negative for the presence of semen. Rather than subpoenaing the state crime lab employee who had conducted the tests, defense counsel attempted to elicit that information through Dr. Concannon. The state objected that the testimony was hearsay. The trial court sustained the objection and immediately called a conference in chambers.

There, after ascertaining that the tests indeed were negative for the presence of semen, the judge repeatedly asked defense counsel why he "didn't . . . subpoena someone" because such a test result "is very important evidence." Defense counsel explained that he "thought there would be a stipulation." The court then stated to defense counsel: "I have very grave difficulty understanding . . . why you have not brought a witness in here

if there was testing done and if it was negative." The court then called a recess and directed defense counsel to call the crime lab to determine whether a representative could come to court.

After reconvening, the assistant district attorney informed the court outside the presence of the jury that she and defense counsel had spoken by telephone to a Mr. Wytucki at the crime lab. Wytucki, the employee who conducted the tests, stated that he would have testified that the results were negative, but that semen nonetheless could have been present in low amounts. He indicated that condom use, improper collection of the sample, or postcoital physical activity of Natasha also could account for a negative reading. Counsel for the state and the defense then agreed to stipulate that the results were "inconclusive."

Defense counsel then indicated that his decision not to call a crime lab witness was based on trial strategy. He stated that testimony by the crime lab employee might confuse the jury:

> [P]art of my strategy decision here is that I want the jury to know that there were tests conducted and that the results were inconclusive. I think by bringing Mr. Wytucki down, we would have a considerable amount of testimony as to why or why not there was nothing found. And I think from a strategy standpoint that may lead the jury astray from what I think is a very crucial issue of credibility in this case. Really this is a no physical evidence case and it comes down to credibility. And I think by just informing the jury of the tests and the inconclusive results should suffice.

The court then questioned Glass as to his understanding of the events. Glass first stated that he disagreed with defense counsel's strategy, but later he accepted it. Trial resumed before the jury and the stipu-

lation was presented to it. The jury returned a guilty verdict.

Glass filed a motion for postconviction relief. Among other challenges to his conviction, he claimed he had received ineffective assistance of counsel based on defense counsel's failure to call "vital" defense witnesses. The trial court determined that by failing to have Wytucki testify as to the negative results of the test, defense counsel rendered prejudicially ineffective assistance, thus entitling Glass to a new trial. The state appeals.

To prevail on a claim that defense counsel's assistance was so defective as to require reversal of a conviction, a convicted defendant must show both that the attorney's performance was deficient and that the deficient performance prejudiced the defense. *State v. Pitsch,* 124 Wis. 2d 628, 633, 369 N.W.2d 711, 714 (1985) (citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984)). Both components are mixed questions of law and fact. *Id.* at 633–34, 369 N.W.2d at 714. We will not upset a trial court's underlying findings as to what happened unless they are clearly erroneous. *Id.* at 634, 369 N.W.2d at 714. Whether counsel's performance was deficient and prejudicial, however, are questions of law which we review without deference to the trial court's determinations. *Id.* at 634, 369 N.W.2d at 715.

To establish deficient performance, the complaining defendant must show that trial counsel's representation fell below objective standards of reasonableness. *Id.* at 636, 369 N.W.2d at 716. The complaining defendant's burden is a heavy one because judicial scrutiny of counsel's performance is highly deferential. *See id.* at 637, 369 N.W.2d at 716. We indulge in a strong presumption

that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* We nonetheless conclude that Glass has adequately established that the representation he received at trial was substandard.

The trial court found that Natasha and Glass engaged in a "lengthy period" of sexual intercourse; that Natasha was unable to rule out the possibility of ejaculation; that tests on the vaginal swabs proved negative for sperm; that defense counsel failed to secure the testimony of state crime lab employee Wytucki who would have testified to that fact; and that the stipulation that the tests were "inconclusive" was inaccurate.

These findings are not clearly erroneous. Furthermore, they support the legal conclusion that defense counsel's performance fell short of constitutionally sufficient assistance. Glass' defense was that Natasha fabricated the event. The negative test results were critically important to his theory of defense. A "negative" test result is far different from an "inconclusive" one. Defense counsel's explanation for stipulating away such potentially exculpatory evidence is unsatisfactory and implausible. Whether or not the strength of that evidence later might have been diminished, Glass was entitled to have the jury hear it. Moreover, defense counsel apparently never spoke to Wytucki until after the court directed that a phone call be made to the crime lab, thus weakening his assertion that deliberate strategy informed his decision not to subpoena Wytucki. We conclude that defense counsel's failure to call Wytucki was not a reasoned defense strategy which misfired, but reflects constitutionally deficient performance.

We next turn to the second component, whether defense counsel's deficient performance prejudiced Glass' right to have a reliable and just trial. To establish prejudice, Glass must show that but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 642, 369 N.W.2d at 719. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Defense counsel testified at the postconviction motion hearing that he told the jury in closing arguments that the test was negative for semen. The trial court nevertheless concluded that the error was fatally prejudicial. Quoting *Strickland,* 466 U.S. at 695–96, the court stated that because credibility was the central issue, "the error had a 'pervasive effect on the inferences to be drawn from the evidence' and 'alter[ed] the entire evidentiary picture.' " The court also concluded that, had defense counsel been adequately prepared, Wytucki would have assisted in presenting Glass' defense that the event did not occur. The court then stated in its written decision:

> The stipulation to the effect that the test results were "inconclusive" was, first, inaccurate and second, a lame substitute for the true result. The fact that the attorney "got away with" giving the jury the true results in his closing statement is insufficient to correct the error, because, among other things, the jury was explicitly instructed to "disregard any implication and draw no inference from" remarks of the attorneys which are not proved in the evidence.

The state disagrees and asserts that "[t]here is no reasonable probability that the jury, having heard

153

Wytucki's testimony that the test results were negative for the presence of semen, would have had a reasonable doubt respecting guilt." We disagree and conclude that the trial court was correct. This largely was a credibility battle. A potentially weighty means of impugning Natasha's credibility would have been to show that, while she alleged an act of sexual contact normally resulting in physical evidence, none was found.

The test is whether defense counsel's errors undermine confidence in the reliability of the results. *State v. Moffet,* 147 Wis. 2d 343, 357, 433 N.W.2d 572, 577 (1989), *habeas corpus granted sub nom., Moffett v. Kolb,* 930 F.2d 1156 (7th Cir. 1991). The question on review is whether there is a reasonable probability that a jury viewing the evidence untainted by counsel's errors would have had a reasonable doubt respecting guilt. *Id.* We cannot say with confidence that the trial result was reliable. If the jury properly had been given the omitted information, there is a reasonable probability that it would have had a reasonable doubt respecting Glass' guilt.

*By the Court.*—Order affirmed.