STATE of Wisconsin, Plaintiff-Respondent,

v.

Delano J. O'BRIEN, Defendant-Appellant.†

Court of Appeals

*No. 96–3028–CR. Submitted on briefs August 29, 1997.—Decided October 22, 1997.*

(Also reported in 572 N.W.2d 870.)

†Petition to review granted.

329

330

On behalf of the defendant-appellant, the cause was submitted on the brief of *Martin E. Kohler* of *Kohler & Hart* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *William C. Wolford,* assistant attorney general.

Before Snyder, P.J., Brown and Anderson, JJ.

ANDERSON, J. Delano J. O'Brien appeals the trial court's denial of his motion to suppress evidence obtained during a search of his premises, from judgments of conviction for two counts of third-degree sexual assault, and an order denying both his motion for a *Machner*[1] hearing and his motion for a new trial based upon ineffective assistance of counsel. O'Brien argues that the trial court erred when it: (1) denied his motion to suppress evidence taken from his truck; (2) denied his motion to remove exhibits for scientific testing in advance of filing a motion for postconviction relief; and (3) refused to conduct a *Machner* hearing relating to O'Brien's ineffective assistance of counsel claim. Following the lead of the federal courts regarding the scope of search warrants, we conclude that a warrant authorizing a search of a particularly described premises may permit the search of vehicles owned or controlled by the owner of, and found on, the premises.

---

[1] *See State v. Machner,* 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

We also prescribe guidelines for a trial court when a defendant seeks postconviction discovery. In the future, a defendant must show that the evidence sought to be gained from postconviction discovery is material; the motion must provide specific statements as to what the results might be and how those results create a reasonable probability of a different outcome. The decision to grant or deny the motion for postconviction discovery is within the sound discretion of the trial court. Because these guidelines are prospective in nature, they cannot be applied in this case. Nevertheless, we conclude that O'Brien's arguments are without merit.

We further conclude that O'Brien's arguments regarding ineffective assistance of counsel are speculative and unsupported in the record, and that even if trial counsel had followed O'Brien's retrospective approach, the result would not have been different. Accordingly, we affirm the judgments and the order.

FACTS

On May 8, 1994, Mark A. reported to police that O'Brien had performed fellatio on him and had anal intercourse with him without Mark's consent. Mark was transported to the hospital where he was examined and swabs and smears were taken. A search warrant was issued and evidence was taken from O'Brien's residence and vehicle. O'Brien was arrested and charged with two counts of third-degree sexual assault.

Pretrial, O'Brien moved to suppress a pair of Hanes underwear and blue jeans that were located in

his truck.[2] The trial court denied the motion. A jury thereafter found O'Brien guilty of two counts of third-degree sexual assault, contrary to § 940.225(3), STATS., 1993–94. O'Brien was sentenced to prison for an indeterminate sentence not to exceed thirty months on count one and for count two he received probation for five years, consecutive to count one. Both sentences were stayed pending appeal.

O'Brien filed notice of his intent to pursue postconviction relief pursuant to § 809.30, STATS., 1993–94. O'Brien then filed a motion to remove exhibits for purposes of physical testing in anticipation of his motion for postconviction relief. The trial court denied the motion concluding that it lacked both authority and reason to grant the motion.

Consequently, O'Brien filed the motion for postconviction relief alleging that trial counsel's representation of O'Brien was ineffective. The trial court denied the motion concluding that even if the evidence had been submitted to the jury, the result would not have been any different and that trial counsel's strategy was reasonable. O'Brien appeals. Additional facts will be included within the body of the decision as necessary.

---

[2] O'Brien also filed a motion to compel discovery concerning the examination of Mark at the hospital after the alleged assaults. The court conducted an in camera review of the reports which were negative as to any external signs of assault. The court concluded that as long as the State did not assert that the alleged victim sustained injuries, the reports would not be released.

## DISCUSSION

### *Search Warrant*

The first issue is whether the evidence seized from O'Brien's truck should have been suppressed. The relevant facts are as follows. Based upon Mark's report of an alleged sexual assault, Detective David Guss applied for and received a warrant to search "certain premises in the town of Saukville . . . occupied by [O'Brien]." The officers were looking for a pair of Hanes underwear and blue jeans, as well as other items which might constitute evidence of a crime.

The search of the residence failed to uncover the Hanes underwear or the blue jeans, so one of the officers went outside to search the barn and outbuilding. Adjacent to the outbuilding was a pick-up truck which was registered to O'Brien. The officer opened the door to the truck and saw a pair of blue jeans tucked behind the driver's seat. The officer had Guss retrieve the blue jeans, which were consistent with the victim's, and Guss also found a pair of Hanes underwear in one of the pockets.

O'Brien moved to suppress this evidence. The court determined that in the case of a duplex, with two separate tenants, those portions of the premises which are not allocated to one tenant or another constitute common areas that are part of the curtilage of the place directed to be searched. The court found the area outside the direct residence occupied by O'Brien to be a common area that he shared with the other tenant and that the warrant extended to those premises. O'Brien's motion was denied.

■

In reviewing an order denying a motion to suppress evidence obtained as a result of an unlawful

search, we will uphold a trial court's findings of fact unless they are clearly erroneous. *See State v. Eckert*, 203 Wis. 2d 497, 518, 553 N.W.2d 539, 547 (Ct. App. 1996). However, whether a search and seizure satisfies constitutional demands is a question of law subject to de novo review. *See id.*

Both the Fourth Amendment of the United States Constitution and Article I, § 11 of the Wisconsin Constitution guarantee that persons shall be secure from unreasonable searches and seizures. Wisconsin courts traditionally interpret the two very similar provisions in concert. *See State v. Andrews*, 201 Wis. 2d 383, 389, 549 N.W.2d 210, 212 (1996). The development of Wisconsin law on search and seizure parallels that developed by the United States Supreme Court. *See id.*

The United States Supreme Court has held that search warrants authorize " 'the search of 'place[s]' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized.' " *Id.* at 400, 549 N.W.2d at 216 (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 (1978)). In fact, a premises search warrant authorizes the search of any items found on those premises regardless of ownership. *See id.*

Our supreme court has adopted the "physical proximity test," which allows "police . . . [to] search all items found on the premises that are plausible repositories for objects named in the search warrant, except those worn by or in the physical possession of persons whose search is not authorized by the warrant." *Andrews*, 201 Wis. 2d at 403, 549 N.W.2d at 218. The *Andrews* court looked to the following principles for guidance:

> Because the search warrant and accompanying affidavit established probable cause for the search of the premises for [the named objects], and the affidavit indicates that [the defendant] was the target of the search, this court does not believe that ownership or control of the various containers searched on the premises should be a relevant consideration. The warrant authorized the search of the premises, limited only by the nature of what the agents were searching for.

*Id.* at 399, 549 N.W.2d at 216 (alterations added) (quoting *United States v. Schmude*, 699 F. Supp. 200, 202 (E.D. Wis. 1988)) (evidence gathered from a vehicle located on the premises for which a valid search warrant had been issued was admissible even though the vehicle was not owned by the person who was the target of the search).

O'Brien does not argue that the search warrant and accompanying affidavit failed to establish probable cause for the search of the residence. Rather, he maintains that the search warrant only described the actual residence with particularity, and the search could go no further—it did not authorize the search of his truck. He cites to *State v. Caban*, 202 Wis. 2d 416, 551 N.W.2d 24 (Ct. App. 1996), in support of this contention. O'Brien persists that even if the truck were part of the common area of the property, the police failed to demonstrate probable cause to search the truck for evidence. We disagree.

The search warrant at issue here authorized "*certain premises* in the town of Saukville . . . occupied by [O'Brien] and more particularly described as follows: 1618 Hawthorne Drive brown in color siding with white trim two family residence, specifically upper flat" to be searched. (Emphasis added.) The warrant

approved a search of the entire premises. The specific mention of the "residence" in the search warrant does not limit the scope of the search to that area only, but instead makes the premises to be searched more identifiable. *See United States v. Griffin*, 827 F.2d 1108, 1114–15 (7th Cir. 1987) (citing *United States v. Palmisano*, 386 F. Supp. 599, 599–600 (E.D. Wis. 1974)) (specific reference to areas in search warrant was for the purpose of identifying the premises and was not intended to limit the area to be searched). A more limited reading of the search warrant would likely result in concealment of evidence or frustration of purpose. *See Rainey v. State*, 74 Wis. 2d 189, 204–05, 246 N.W.2d 529, 535 (1976).

■

The issue then is whether the search exceeded the scope of the warrant, which depends on whether the Hanes underwear and blue jeans were likely to have been found in the outbuilding, in the barn or in O'Brien's truck. *See Griffin*, 827 F.2d at 1115. We conclude that it did not. The officers had probable cause to search O'Brien's premises, including the truck, for those items contained in the search warrant that were not found in the residence. The warrant authorized a search for a pair of Hanes underwear and a pair of blue jeans, among other things, which according to the affidavit were removed in a room described as a "study." The officers were unable to locate the underwear or blue jeans anywhere in the home. Clearly, the truck, the barn and the outbuilding were plausible repositories for either of those items. We conclude that it was reasonable for the officers to search the remainder of the premises for the missing items. Because this was a premises search warrant that authorized the search of

O'Brien's truck, the trial court properly denied the suppression motion.

*Caban* does not resuscitate O'Brien's argument. *Caban* was decided by a divided appellate court (1–1–1) and while O'Brien's case was pending on appeal, *Caban* was reversed by the supreme court. *See State v. Caban*, 210 Wis. 2d 598, 563 N.W.2d 501, *cert. denied*, 118 S. Ct. 328 (1997). The supreme court concluded that Caban had failed to raise the issue of probable cause to search his vehicle in the trial court and that the appellate court had erroneously exercised its discretion when it reviewed the issue. *See id.* at 612, 563 N.W.2d at 507. The supreme court never determined whether the police had probable cause to search Caban's vehicle. *See id.* at 611, 563 N.W.2d at 507.

*Caban* is factually distinguishable as well. In *Caban*, the police had obtained a search warrant for the Hollingsworth residence. While preparing to conduct the search, they observed Caban park his car on the street just south of the Hollingsworths' driveway. *See id.* at 601, 563 N.W.2d at 503. When the police executed the search warrant, they cuffed Caban and forced him to lie down; in the pat-down they found a large quantity of money, but no drugs. *See id.* at 601–02, 563 N.W.2d at 503. The police then searched Caban's vehicle which was located on a public street and recovered approximately 48 grams of marijuana. *See id.* at 602–03, 563 N.W.2d at 503–04.

In this case, the warrant was actually to search O'Brien's premises and person; he was not a third-party visitor to the home who happened to be caught up in the search. Also, O'Brien's truck was parked on the premises, not on a public street. *Caban* is inapposite. We affirm the judgment of conviction.

## Postconviction Discovery

Prior to filing his motion for postconviction relief, O'Brien filed a motion for postconviction discovery seeking to obtain his own independent scientific testing of certain exhibits—penile and anal swabs and smears taken from Mark. At trial, the parties stipulated to the results of the crime lab reports; defense counsel did not seek independent review of the evidence.[3]

Postconviction, O'Brien sought his own independent testing. O'Brien believed the evidence would prove that Mark consented to O'Brien engaging in one act of fellatio, tending to negate count one. O'Brien further opined that confirmation that the anal swabs were negative for blood and semen would negate count two, anal intercourse. The trial court denied the motion on the grounds that § 971.23(5), STATS., 1993–94, does not authorize the release of evidence for scientific testing postconviction. The court further found that the results would not be relevant because to conclude, as O'Brien does, that the presence of the victim's semen on the victim's penis equals consent would require a "substantial presumptive leap."

It is undisputed that there are no cases or statutes that specifically provide for postconviction discovery. Section 971.23(5), STATS., 1993–94, which O'Brien

---

[3] According to the crime lab report, O'Brien was a possible source of semen collected from a white blanket taken from his home; semen identified on an external penile swab and on a penile smear collected from Mark was inconclusive; and no semen was identified on either a second penile smear, an external anal swab, an internal anal swab or an anal smear collected from Mark. The medical report from the hospital indicated that Mark had no visual lacerations or tears of his anus.

brought the motion under, applies to pretrial discovery and investigation.[4]

■

Courts have held that there is no general right to discovery in criminal cases except as provided by statute. *See State v. O'Connor*, 77 Wis. 2d 261, 280 n.7, 252 N.W.2d 671, 679 (1977). Even so, courts have allowed defendants to seek an in camera inspection of information that is protected by statute or even information that is not in the state's possession. *See State v. S.H.*, 159 Wis. 2d 730, 736, 465 N.W.2d 238, 240–41 (Ct. App. 1990) (information sought was protected under § 905.04, STATS., and was in the possession of a private counseling center); *Rock County Dep't of Soc. Servs. v. DeLeu*, 143 Wis. 2d 508, 511, 422 N.W.2d 142, 144 (Ct. App. 1988) (information sought was confidential). In such a case, the defendant must make a preliminary showing that the "sought-after evidence is relevant and may be helpful to the defense or is necessary to a fair determination of guilt or innocence." *State v. Shiffra*, 175 Wis. 2d 600, 608, 499 N.W.2d 719, 723 (Ct. App. 1993). We believe these exceptions to the general rule should be extended to postconviction discovery as well.

We agree with the State that the threshold burden should be high: in order for a defendant to submit evidence to postconviction discovery, he or she should be required to show that the evidence sought to be gained is material.[5]

---

[4] Section 971.23(5), STATS., 1993–94, provides:

On motion of a party subject to s. 971.31(5), the court may order the production of any item of physical evidence which is intended to be introduced at the trial for scientific analysis under such terms and conditions as the court prescribes. . . .

[5] O'Brien raises four theories for release of the exhibits. Because we conclude that the sought-after evidence must be

> [E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.

*State v. Mainiero*, 189 Wis. 2d 80, 88, 525 N.W.2d 304, 307 (Ct. App. 1994) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987)), *cert. denied*, 118 S. Ct. 65 (1997). We review a trial court's findings of fact on the materiality determination under the clearly erroneous standard. *See Shiffra*, 175 Wis. 2d at 605, 499 N.W.2d at 721. We adopt this as the standard for postconviction discovery motions as well.

Other jurisdictions have established similar threshold requirements for postconviction discovery requests. In Illinois, postconviction proceedings allow only limited review because of the potential for abuse of the discovery process. *See People ex rel. Daley v. Fitzgerald*, 526 N.E.2d 131, 135 (Ill. 1988). Courts are to allow postconviction discovery only after a hearing, on motion of a party, for good cause shown. *See id.* The court is to consider the issues presented, the scope of discovery sought, the time between the conviction and postconviction proceedings, any burden placed on the opposing party and on the witness, and alternative means of discovering the evidence. *See id.* Florida has imposed similar limitations. *See State v. Lewis*, 656 So. 2d 1248, 1250 (Fla. 1994) ("On a motion which sets forth good reason . . . the court may allow limited discovery into matters which are relevant and material,

---

material, we need not address the remaining issues. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983) (if a decision on one point disposes of the appeal, we need not discuss other issues raised).

and where the discovery is permitted the court may place limitations on the sources and scope.").

In Oklahoma, the supreme court's rules set forth the appropriate circumstances for granting discovery requests in postconviction proceedings. Postconviction discovery requests must be accompanied by supporting affidavits, describing the material sought to be discovered, and explaining why the material was not supplied at the time of trial. *See Hooker v. State*, 934 P.2d 352, 356 n.25 (Okla. Crim. App. 1997). If the affidavits raise a substantial question and the material being sought would have resulted in a different outcome at trial, the court may direct a response from the opposing party on why a discovery order should not be issued. *See id.*

We are convinced that in order to prevent potential abuses of the postconviction discovery process, guidelines, similar to those set forth in other jurisdictions, are necessary. Accordingly, we hold that the party filing the postconviction discovery request must: (1) provide supporting affidavits with the motion which describe the material sought to be discovered and explain why the material was not supplied or discovered at or before trial; (2) establish that alternative means or evidence is not already available such that the postconviction discovery is necessary to refute an element in the case; (3) describe what results the party hopes to obtain from discovery and explain how those results are relevant and material to one of the issues in the case; and (4) after meeting the first three criteria, the party must then convince the trial court that the anticipated results would not only be relevant, but that the results would also create a reasonable probability of a different outcome. General allegations that mate-

rial evidence may be discovered are inadequate for postconviction discovery motions.

Because our decision to allow for limited postconviction discovery is a new principle of law, it may be applied prospectively only. *See McKnight v. General Motors Corp.*, 157 Wis. 2d 250, 253–54, 458 N.W.2d 841, 843 (Ct. App. 1990). Accordingly, we will apply the standard of review for pretrial discovery. Discovery decisions by the trial court are governed by a discretionary standard of review. *See Vincent & Vincent, Inc. v. Spacek*, 102 Wis. 2d 266, 270, 306 N.W.2d 85, 87 (Ct. App. 1981). Accordingly, we review O'Brien's claim that the trial court erred in denying his postconviction discovery request under the erroneous exercise of discretion standard of review. *See id.*

The trial court determined that even if the semen came from the victim, O'Brien was not prejudiced by the lack of testing by the defense because the jury was allowed to assume that the semen came from Mark or O'Brien. The trial court further concluded that it "would have to make a substantial presumptive leap that because a person is sexually aroused, that would mean they consented to any sexual act." These findings are supported by the record.

O'Brien sought postconviction scientific testing of the penile and anal swabs and smears taken from Mark. As to the penile swabs, we conclude that the desired results proving the existence of Mark's semen on his penis is proof of consent—O'Brien equates arousal and ejaculation with consent—is speculative. In addition, the record indicates that O'Brien argued to the jury, without objection, that it was Mark's semen on the penile swab which demonstrated his consent to the act of fellatio.

We further conclude that the hoped for results of the testing of the anal swabs and smears are also not material. O'Brien's argument is that there is always tearing and bleeding as a result of anal intercourse and the absence of blood in the samples and tears would support his story that the anal intercourse never happened. O'Brien cites no authority for this proposition. Moreover, the crime lab results were negative for blood and semen; further testing by O'Brien would be cumulative.[6]

We conclude that neither statutes nor case law creates a clear legal duty that mandates the trial court to grant postconviction discovery upon a general request. Rather, what is contemplated is a discretionary decision by the court. The court will only be able to make that decision after the defendant has explained, with specificity, both why the sought-after evidence is material to his or her defense and how those results create a reasonable probability of a different outcome.

---

[6] O'Brien also suggests that the hoped for results would constitute "newly discovered" evidence that, at the least, would justify a new trial in the interest of justice. In order to receive a new trial, the defendant must show, at a minimum, the following criteria:

> (1) the evidence was discovered after trial; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue; (4) the evidence is not merely cumulative to the evidence presented at trial; and (5) a reasonable probability exists of a different result in a new trial.

*State v. Coogan*, 154 Wis. 2d 387, 394–95, 453 N.W.2d 186, 188 (Ct. App. 1990). O'Brien has failed to make the requisite showing.

Lastly, O'Brien argues that the trial court erroneously exercised its discretion in denying him an evidentiary hearing to determine whether he received ineffective assistance of trial counsel. We disagree.

The standard for reviewing this issue was recently stated in *State v. Bentley*, 201 Wis. 2d 303, 310–11, 548 N.W.2d 50, 53 (1996):

> If the motion on its face alleges facts which would entitle the defendant to relief, the circuit court has no discretion and must hold an evidentiary hearing. Whether a motion alleges facts which, if true, would entitle a defendant to relief is a question of law that we review de novo.
>
> However, if the motion fails to allege sufficient facts, the circuit court has the discretion to deny a postconviction motion without a hearing . . . . [Citations omitted.]

Further, " 'if the defendant fails to allege sufficient facts in his [or her] motion to raise a question of fact, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the trial court may in the exercise of its legal discretion deny the motion without a hearing.' " *Id.* at 309–10, 548 N.W.2d at 53 (quoted source omitted; alteration added).

Here, the postconviction motion must raise an issue of fact regarding whether trial counsel's performance was deficient and, if so, whether the deficient performance prejudiced the defendant in order to warrant a hearing. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). We may avoid the deficient performance analysis altogether if the defendant has failed to show prejudice. *See State v. Wirts*, 176 Wis. 2d 174,

180, 500 N.W.2d 317, 318 (Ct. App. 1993). A showing of prejudice requires more than speculation, *see id.* at 187, 500 N.W.2d at 321; rather, the defendant must affirmatively prove prejudice. *See State v. Pitsch*, 124 Wis. 2d 628, 641, 369 N.W.2d 711, 718 (1985). To prove prejudice under *Strickland*, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *See id.*

O'Brien first argues that his trial counsel rendered ineffective assistance by stipulating to the inconclusive findings of the penile swabs in the crime lab reports. Mark testified that he did not consent to having sexual intercourse with O'Brien and that at no time did he have an erection. O'Brien posits that with conclusive evidence that the semen on the penile swab was Mark's, defense counsel could have "elicited expert testimony to provide a basis for the jury to believe that since [Mark] ejaculated, he lied about having an erection and consented to O'Brien's performing [fellatio] on him."

O'Brien, however, provides nothing in support of this argument, neither anticipated expert testimony nor affidavits. O'Brien's citation to a list of six sources concerning the anatomy and physiology of the penis, without reference to or copies of the specific pages where the supporting material can be found, is insufficient. *See Nelson v. Schreiner*, 161 Wis. 2d 798, 804, 469 N.W.2d 214, 217 (Ct. App. 1991) (assertions of fact that are not part of the record will not be considered). O'Brien's argument is purely speculative. We therefore

conclude that his motion fails to raise a factual question of whether he was prejudiced by the performance of trial counsel because he failed to show a reasonable probability that, but for trial counsel's alleged deficiency, it could have been proven that Mark consented to having O'Brien perform fellatio on him. *See Strickland,* 466 U.S. at 694.

Moreover, trial counsel was allowed to introduce evidence that there was semen on the penile swab. He also argued to the jury, without objection, that the presence of semen meant that Mark consented. He stated: "[A]bout the semen on [Mark's] penis . . . . We marked it in evidence. It's marked, you'll see it. Semen on the penis, it's [Mark's] semen. Consistent. He gave him a blow job, and the man came; and he cooperated and he spread his legs." O'Brien argued that it was Mark's semen and that he consented to the act of fellatio, yet the jury found against him. We are not convinced that additional postconviction testing of the penile swab would change the outcome of the trial.

Next, O'Brien claims that counsel was ineffective for stipulating to the nurse's report of no physical trauma, instead of having her testify to the same. O'Brien further maintains that trial counsel was ineffective for failing to call a witness to refute a detective's testimony that tearing and lacerations were not normally present in cases of sexual assault which diminished the impact of the information concerning the lack of anal trauma.

At trial, the parties agreed to have detective Guss read into the record both the nurse's findings of no lacerations, tears or signs of bleeding on Mark's anus and the findings of the crime lab report. Guss was also allowed to testify that in his opinion, based on his training and experience, tears and lacerations are not

common during penis to anus intercourse. He explained that:

> There are reasons why there would not be any damage to an anus if it were penetrated by a penis . . . . A rectum is by its own nature rather elastic, and it's meant to be able to accommodate a large, hard stool. . . . If it can accommodate that large, hard stool, it can also accommodate an adult penis. And again, that is consistent for children as well.

At a pretrial motion hearing, trial counsel explained his theory as to count two. Mark's statements were that the anal intercourse hurt; it was painful and forceful. O'Brien denied that he had anal intercourse with Mark and trial counsel was looking for any evidence that would support his denials. The nurse's report supported the claim of innocence.

Even if the nurse had testified, rather than stipulated to the lab results, the State could have had the detective testify as to his opinion as well. Also, there was no guarantee that the nurse's testimony would be as definitive that there were no lacerations or tears to Mark's anus. Rather, she could have expanded on her examination. The stipulation preserved the integrity of her report that there was no visible trauma. We conclude that trial counsel's stipulation to the nurse's report does not support the claim of ineffective assistance of counsel.

Moreover, it is pure speculation that the failure to present an expert witness to disclaim the detective's testimony would have made a difference. Again, O'Brien has made no showing in the motion papers as to what an expert would have said, or if there even were such an expert who would testify that there is

always blood and lacerations from first-time anal intercourse. Such conclusory allegations, without more, are insufficient to establish ineffective assistance of counsel.

O'Brien's final contention is that counsel was ineffective for failing to conduct a reasonable investigation of the case. He argues that trial counsel should have learned that Mark was a state championship qualifier as a varsity team wrestler while in high school. O'Brien insists that this information "provides compelling, powerful evidence that [Mark] had the ability and the intestinal fortitude . . . to overpower O'Brien if [Mark] chose to do so."

This argument is again speculative. Mark testified that O'Brien was straddling him with his buttocks over Mark's chest area when he put his mouth on Mark's penis. Mark testified that he told him to stop, but that "there's not much he could do because he was sitting on [his] chest . . . [he] thought about punching him, but [O'Brien's] a big guy. And [he] didn't think that would work." It is purely speculative to argue that (1) Mark had the physical ability to resist and (2) that the jury's knowledge of his wrestling experience would convince it that Mark was lying.

In addition, Mark's high school wrestling experience is not material. Mark testified that he told O'Brien to stop what he was doing numerous times, but to no avail. In Wisconsin, a victim of sexual assault is not required to physically resist the assault; rather, " 'no' means no." *See State v. Lederer*, 99 Wis. 2d 430, 436, 299 N.W.2d 457, 461 (Ct. App. 1980).

Lastly, the cases cited by O'Brien in support of his ineffective assistance of counsel arguments are distinguishable. First, O'Brien cites to *State v. Hicks*, 195

350

Wis. 2d 620, 536 N.W.2d 487 (Ct. App. 1995), for the proposition that the failure to have evidence scientifically tested constitutes ineffective assistance of counsel. However, the supreme court affirmed the appellate court decision on other grounds. *See State v. Hicks*, 202 Wis. 2d 150, 152, 549 N.W.2d 435, 436 (1996). The supreme court ordered a new trial because the DNA evidence excluding Hicks as the donor of one of the hair specimens was relevant to the critical issue of identification, the jury did not hear this evidence and the State assertively and repetitively used the inconclusive hair evidence as affirmative proof of Hicks' guilt. *See id.* at 153, 549 N.W.2d at 437. Because the real controversy of identification was not fully tried, the court remanded the case for a new trial in the interests of justice. *See id.*

Here, it is undisputed that O'Brien performed fellatio on Mark; the issue is not one of identification, but of consent. Even if scientific testing of the penile swab proved that the semen belonged to Mark, it is purely speculative that this establishes consent. In addition, trial counsel was allowed to argue that the semen came from Mark which he argued affirmatively proved that Mark consented to and enjoyed the act of fellatio. *Hicks* is inapposite.

*State v. Glass*, 170 Wis. 2d 146, 488 N.W.2d 432 (Ct. App. 1992), is equally unavailing. In *Glass*, trial counsel stipulated that the crime lab tests for semen in the vagina of the victim were "inconclusive," even though the state crime lab employee would have testified that the tests on the vaginal swabs proved negative for semen. *See id.* at 149–52, 488 N.W.2d at 433–34. This court concluded that trial counsel's failure to present the potentially exculpatory testimony of the lab analyst that the test result was negative was

deficient performance that prejudiced Glass. *See id.* at 152–54, 488 N.W.2d at 434–35.

Unlike the stipulation in *Glass* which stipulated away potentially exculpatory evidence and presented the jury with the wrong test results, the stipulation in this case did not misrepresent the results of the lab report. Even though the lab results were inconclusive as to the donor of semen on the penile swab, trial counsel argued that the semen came from Mark which he argued affirmatively proved that Mark consented to the act of fellatio. Also, the stipulation provided that the nurse's physical examination disclosed no anal lacerations or tears which was consistent with O'Brien's defense that no anal intercourse occurred, and O'Brien has not presented any facts in his postconviction motion that rebut the detective's testimony to the contrary.

In sum, we hold that the trial court correctly concluded that nothing in O'Brien's postconviction motion or attached affidavits established the necessary prejudice under *Strickland*. O'Brien's contentions are speculative. O'Brien has failed to affirmatively prove that but for counsel's allegedly unprofessional errors, the result of the proceedings would have been different. We therefore affirm the trial court's order denying O'Brien's postconviction motion for an evidentiary hearing to determine his ineffective assistance of counsel claim.

*By the Court.*—Judgments and order affirmed.