State of Wisconsin, Plaintiff-Respondent,
v.
Rick A. Holtz, Defendant-Appellant.
Nos. 2003AP1309-CR, 2004AP603-CR
Court of Appeals of Wisconsin.
Opinion Filed: April 27, 2005.
Before Anderson, P.J., Brown and Snyder, JJ.
¶ 1 PER CURIAM.
Rick Holtz appeals from a judgment of conviction for second-degree sexual assault of a child under age sixteen, as a repeat offender. He also appeals from orders denying his postconviction motions alleging ineffective assistance of trial counsel.[1] We affirm the circuit court's determination that Holtz was not denied the effective assistance of counsel.
¶ 2 On October 6, 2001, Holtz, then age twenty-seven, allowed a group of seven teenagers to party in his apartment. Upon their request, Holtz provided the group with alcohol. The group imbibed to the point where some teens passed out or vomited. The next day Amanda H., age thirteen, reported that Holtz had sexual intercourse with her.
¶ 3 At trial Amanda testified that she first met Holtz when she and her friends went to his apartment. By 9:30 or 10:00 p.m. she was "pretty drunk." She was lying on the bathroom floor when Holtz picked her up and took her to his bedroom. It was about 12:30 or 1:00 a.m. Holtz laid her on his bed. She described herself as "halfway passed out by then." Holtz removed her pants and underwear and had sexual intercourse with her. She believed he used a condom. On cross-examination she explained that she figured Holtz used a condom because her test results from the rape examination did not indicate the presence of semen.
¶ 4 Three other teens testified that at some point Amanda was in Holtz's bedroom. One girl indicated that when she saw Amanda about 8:30 the next morning, Amanda was upset and reported that Holtz had had sex with her. The crime lab report was admitted into evidence upon stipulation. The court instructed the jury that the lab found no evidence either confirming or negating sexual conduct by either Holtz or Amanda.
¶ 5 Holtz argues that he was denied the effective assistance of counsel at trial. A claim of ineffective assistance of counsel requires the defendant to show both that his or her counsel's performance was deficient and that his or her defense was prejudiced by deficient performance. State v. Johnson, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990). These components present mixed questions of fact and law. Id. The circuit court's findings of fact as to what happened will not be overturned unless clearly erroneous. Id. The ultimate determinations of whether counsel's performance was deficient and prejudicial to the defense are questions of law which this court reviews independently. Id. at 128.
¶ 6 The test for the performance prong of the ineffective assistance test is whether counsel's assistance was reasonable under the facts of the particular case, viewed as of the time of counsel's conduct. State v. Pitsch, 124 Wis. 2d 628, 636-37, 369 N.W.2d 711 (1985). There is a strong presumption that counsel acted reasonably within professional norms. State v. Smith, 207 Wis. 2d 258, 273, 558 N.W.2d 379 (1997). "Counsel need not be perfect, indeed not even very good, to be constitutionally adequate." State v. Thiel, 2003 WI 111, ¶ 19, 264 Wis. 2d 571, 665 N.W.2d 305 (citing State v. Williquette, 180 Wis. 2d 589, 605, 510 N.W.2d 708 (Ct. App. 1993), aff'd, 190 Wis. 2d 677, 526 N.W.2d 144 (1995)). Under the prejudice prong, the question is whether counsel's errors were so serious that the defendant was deprived of a fair trial and a reliable trial outcome. Pitsch, 124 Wis. 2d at 640-41. When reviewing a claim of ineffective assistance of counsel, the reviewing court may reverse the order of the two tests or avoid the deficient performance analysis altogether if the defendant has failed to show prejudice. Johnson, 153 Wis. 2d at 128.
¶ 7 Holtz argues that his trial counsel failed to support the theory of defensethat Holtz did not have sex with Amanda and that prosecution witnesses were unreliable because they were drunk and told different storiesby failing to conduct effective cross-examination to reveal the inconsistencies in the witnesses' accounts. He first focuses on the cross-examination of Amanda and what he perceives to be counsel's failure to impeach Amanda regarding her claim, for the first time at trial, that Holtz used a condom. He acknowledges that the question, "Did you ever see a condom?" was ambiguous as to whether she had ever seen a condom in her lifetime and knew what it was or if she had seen one at the time of the sexual assault. He faults trial counsel for not clarifying the ambiguity and demonstrating to the jury that for the first time at trial Amanda was claiming a condom was used. He points to a sexual assault examination questionnaire in discovery material in which Amanda indicated she had no idea if a condom was used. He also suggests counsel could have elicited from either Amanda or a police officer that Amanda's greatest concern after the sexual assault was whether she was pregnant. Finally, he thinks counsel should have presented evidence that no condom was recovered from Holtz's apartment on October 7, 2001.
¶ 8 Trial counsel testified that he did not elicit testimony about Amanda's pregnancy concerns or that a search of the apartment did not produce a condom because he successfully established in Amanda's cross-examination that the only reason she thought a condom was used was because of the lack of semen. Thus, counsel made a strategy decision. We are not to second-guess trial counsel's selection of trial tactics or the exercise of professional judgment after weighing the alternatives. State v. Felton, 110 Wis. 2d 485, 502, 329 N.W.2d 161 (1983). However, we will examine counsel's conduct to be sure it is more than just acting upon a whim; there must be deliberateness, caution, and circumspection. See id. A strategic or tactical decision must be based upon rationality founded on the facts and law. Id.
¶ 9 Trial counsel explained that he did not want to put the primary investigating officer on the stand because his testimony would not be confined to the fact that a condom was not found. Counsel described the officer as potentially a "very dangerous fellow."[2] Counsel considered addressing the condom issue solely in Amanda's cross-examination to be a "fairly safe manner," and that any questions about pregnancy concerns would have made no difference. We conclude that counsel's strategy decision was based on a reasonable view of the circumstances presented at trial. Cross-examining Amanda about why she thought a condom was used had multiple effects. First, it served to clarify that Amanda believed that the question, "Did you ever see a condom?" meant in her lifetime since on cross-examination she confirmed that she did not see a condom at the time of the sexual assault. Second, her admission that she only believed a condom was used because the test results were negative for semen also tended to suggest she was tailoring her recollection of that night to the evidence or, that is, the absence of physical evidence. This supported the theory of defense that Amanda had no clear, independent recollection of what occurred. Third, that she only believed a condom was used because there was no semen put before the jury the same evidence that the medical questionnaire would havethat she did not know one way or the other whether a condom was used. Questions about her earlier pregnancy concerns would only have served to confirm Amanda's initial statements that the sexual assault occurred. Trial counsel's performance with respect to Amanda's testimony that Holtz used a condom was reasonable strategy and not deficient.
¶ 10 Holtz next argues that trial counsel should have impeached Amanda's testimony that earlier in the evening she went for a walk with her friends Jenny and Dan. Dan testified that earlier in the evening he and Amanda went to his house to talk and that Amanda had fallen asleep at his house for about an hour.[3] Again, we are presented with a strategy decision by trial counsel as to how to support the theory of defense. Counsel indicated that in attempting to show that the teens were drunk and were unreliable in their differing versions of the evening's events, he did not want to get too precise about what everyone did. Neither Dan nor Jenny testified that the three friends went for a walk; counsel pointed out that departure from Amanda's account in closing argument. Further, if Amanda was cross-examined about Dan's version that she had gone alone to Dan's house and fallen asleep, it is likely she would have been asked about Dan's description of the "first time" he saw Amanda emerge from Holtz's bedroom and Amanda's claim that Holtz had tried to rape her. Dan indicated that because of that event, Amanda wanted to get away and that is why they went to his house to talk. As counsel explained, any testimony that placed Amanda in Holtz's bedroom at any time was damaging to the defense.[4] It was reasonable strategy to avoid jogging Amanda's memory about what prompted her to go with Dan to his house.
¶ 11 Holtz faults trial counsel for not cross-examining Amanda about her initial statements to her mother and police that she had passed out and that she remembered very little about what had happened to her. He also thinks counsel should have impeached Amanda with her statement to police that she did not start to drink until midnight as inconsistent with her trial testimony that she finished drinking at midnight. Counsel's reasons for not pursuing this line of cross-examination harkens back to not wanting to open the door for testimony by the investigating police officer. Indeed, the initial statement Amanda gave to the officer included details of the sexual assault not otherwise revealed at trial. Counsel also indicated that it would have been hurtful to the defense to have Amanda's mother testify because the fact that she took her daughter to the police was indicative of her belief that Amanda was truthful in asserting that she had been raped. Counsel chose a safer path and we will not second-guess the strategy decision.
¶ 12 Holtz makes a generalized claim that as a whole, trial counsel's cross-examination of Amanda was inadequate. Admittedly cross-examination of Amanda was brief, but that does not mean it was inadequate. The cross-examination was sufficient to show that Amanda's version of what happened earlier in the evening did not match her friends' versions and that she was drunk. It struck a balance between not making Amanda appear sympathetic or victimized to the jury and revealing gaps in her story. Further, given the detailed statement Amanda gave to the investigating police officer, any attempt to pin down the details may have given way to a litany of damaging evidence. We conclude that trial counsel was not ineffective with respect to Amanda's cross-examination.[5]
¶ 13 The second aspect of Holtz's claim that he was denied the effective assistance of counsel pertains to the presentation of the three defense witnesses. Three of Amanda's teenaged friends were called to give evidence about her reputation for being truthful. Holtz claims that trial counsel's examination of the witnesses actually bolstered Amanda's credibility. Holtz characterizes the examination of these witnesses as "tortured questioning" which resulted in the witnesses indicating that although Amanda had a reputation for not being truthful, she would not lie about being raped.
¶ 14 The circuit court found that based on the defense investigator's interview of the three witnesses, it was reasonable for trial counsel to expect the witnesses to testify that Amanda's reputation for truthfulness was not a good one. It found that the witnesses did not perform "as billed." These findings are not clearly erroneous. The circuit court concluded that trial counsel's failure to personally interview the witnesses was deficient performance but that Holtz was not prejudiced as a result. The circuit court also found that trial counsel used techniques in examining the witnesses that pushed the limits on character evidence and left the jury with the impression that even amongst her friends, Amanda was not known for always telling the truth.
¶ 15 We conclude that Holtz was not prejudiced by trial counsel's allegedly deficient performance in examining the defense witnesses. Each of the witnesses indicated that Amanda was known to be untruthful, with only one hedging his response that she was untruthful only when really drunk. Despite some damaging aspects of the defense witnesses' testimony, much of it was effective. Two of the witnesses testified that earlier in the evening Amanda made a false report that Holtz had taken off his clothes and was going to try to rape her. One witness indicated that when Amanda told the others that Holtz had sex with her, some believed her and others did not. The desired point was made.
¶ 16 The final claim is that trial counsel was ineffective for not calling a crime lab analyst at trial. Relying on State v. Glass, 170 Wis. 2d 146, 488 N.W.2d 432 (Ct. App. 1992), Holtz argues that a crime lab analyst should have been called to explain that the results of the crime lab analysis were negative for semen. This case is not like Glass. In Glass, trial counsel was ineffective for not calling a crime lab analyst to testify that tests were negative for the presence of semen and instead stipulating that the test results were "inconclusive." Id. at 148-49. On Glass's postconviction motion the circuit court found that the stipulation that the test results were "inconclusive" was inaccurate. Id. at 152. On appeal the court recognized that the negative test results were critically important to Glass's theory of defense and that "[a] `negative' test result is far different from an `inconclusive' one." Id.
¶ 17 Here the parties' stipulation in lieu of the testimony of the crime lab analyst was that the "lab found no evidence either confirming or negating sexual conduct by either the defendant or the complaining witness or that the defendant had been with the complaining witness." Further, the crime lab report was admitted into evidence and sent to the jury room. The report stated under a large heading, "RESULTS," that "No semen was identified on the following items:" and the list included Amanda's underwear and the swabs taken from both Amanda and Holtz. Amanda herself acknowledged that the tests were negative for the presence of semen. Thus here, unlike in Glass, the jury was given the critical information that the crime lab tests were negative.
¶ 18 Trial counsel testified that he decided not to call the crime lab analyst because it would give the prosecution an opportunity on cross-examination to rehash its case. Trial counsel indicated that he did not want to put on evidence that would make Amanda appear more victimized, such as the description of when and how the testing materials were gathered. Trial counsel observed that members of the jury had tears in their eyes when they heard the facts of the case. Trial counsel wanted to avoid any testimony that would repeat those facts.
¶ 19 Trial counsel also indicated that on cross-examination the crime lab analyst could be asked to acknowledge that the lack of semen did not mean the sexual assault had not occurred. Indeed, at the postconviction hearing, the analyst indicated there could be several reasons why semen was not present in vaginal or cervical swabs even if the sexual assault occurred.[6] If that explanation were given during the analyst's cross-examination, the defense would then have to attempt to show that none of those reasons existed. In that scenario the defense presentation would have far exceeded the efforts of the prosecution.[7] Trial counsel made a reasonable strategy decision that it was better for the jury to just consider the absence of semen as indicating that the sexual assault did not happen rather than consider alternative reasons why semen was not found. Holtz was not denied the effective assistance of trial counsel.
By the Court.Judgment and orders affirmed.
NOTES
[1] After the appeal was filed and on Holtz's motion, this matter was remanded to the circuit court to permit a hearing and decision on Holtz's supplementary motion for postconviction relief raising additional claims of ineffective assistance of trial counsel. See WIS. STAT. § 808.075(5) (2003-04). All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[2] Earlier in the postconviction motion hearing, trial counsel described a statement the police officer took from one boy as "a nice description of a rape case." Trial counsel did not want to present an opportunity for the officer to testify about the statements given to him. Also, having another officer testify about the search would open the door for testimony about items recovered from Holtz's apartment that were consistent with the teenagers' observations, such as underwear similar to that described by Amanda in her police statement and boxer shorts Holtz was seen wearing when he came out of the bedroom. As trial counsel observed, it was best to avoid anything that would link Holtz to the sexual assault.
[3] Holtz suggests the jury could infer that Amanda had a sexual experience with Dan at his house but was incorrectly blaming Holtz. Dan was asked if he had a sexual relationship with Amanda and he said he did not.
[4] It would also have detracted from the defense's attempt to show that Amanda was fabricating the sexual assault by Amanda's admission on cross-examination that the sexual assault "pretty much" happened "just out of the blue."
[5] Within his claim that trial counsel's cross-examination of Amanda was generally inadequate, Holtz argues that trial counsel failed to pin down for the jury when Amanda went through the sexual assault examination. Holtz did not preserve this claim for review because trial counsel was not questioned about his failure to present evidence establishing the date of Amanda's sexual assault examination. See State v. Elm, 201 Wis. 2d 452, 463, 549 N.W.2d 471 (Ct. App. 1996). Even if not waived, the date on which the examination was conducted has little impact in comparison to the critical information that the tests from the examination were negative for semen. Although the jury's question as to when the examination occurred went unanswered because there was no evidence on that point, regardless of when the examination was performed, the prosecution could argue that the lack of semen did not mean the sexual assault did not occur. Further, it is merely speculation for Holtz to suggest that the jury would conclude that the examination did not occur until days or weeks after the sexual assault. That is not a reasonable jury inference.
[6] This testimony could also lead to the prosecution presenting Amanda's statement that Holtz first stuck his finger in her vagina. That act alone could satisfy the element of sexual intercourse. It was something the defense obviously did not want the jury to hear.
[7] The prosecution's case was minimally presented. Only three witnesses and the victim testified. The victim's examination was brief. The victim was not asked to recount details of the sexual assault that she had given a police officer. Trial counsel's performance was responsive to the minimal case presented by the prosecution. Counsel wanted to avoid any testimony that would repeat those facts and did so by having the case presented as briefly as possible. Counsel was careful not to open the door to details that may have been damaging to the defense and instead sought to suggest that the prosecution had not met its burden with its minimal presentation.